Argued and submitted September 11, 1981, affirmed March 8, 1982

In the Matter of the Marriage of

MADDOX,
*Appellant,*
*and*
MADDOX,
*Respondent.*

(No. 80-10-459, CA A20948)

641 P2d 665

Gay Canaday, Lake Oswego, argued the cause and filed the brief for appellant.

Miriam Haverstock Whitney, Tigard, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Joseph and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Wife appeals the custody, visitation and property division provisions of a dissolution decree. We review *de novo* and affirm.

The parties have been married nine years. They have three children, Rille, age 8, Sarah, age 3, and Elisabeth, age 1. Before they separated, husband worked during the day and attended law school at night. Wife worked at home and was the children's primary caretaker. In August, 1980, while husband was vacationing with the two older children, wife moved into the home of Wayne Carr, taking Elisabeth with her. Rille and Sarah continued living with husband under an informal agreement between the parties. Wife provided day care for Sarah, and for Rille after school until 5 p.m., when the girls would be picked up by their father. Wife took Sarah for an overnight visit in December, 1980, and thereafter refused to return her to husband. A temporary custody order was entered in February, 1981, which provided that Rille would continue to stay with husband and that Sarah and Elisabeth would continue with wife. In April, 1981, a decree was entered awarding custody of Rille and Sarah to husband. Neither party was ordered to pay child support to the other.

■ ■ Wife contends that the trial court erred in awarding custody of Rille and Sarah to husband because she contends she performed the role of primary caretaker during the marriage. In deciding the custody issue, we give primary consideration to the best interests and welfare of the children and, in addition to other relevant factors, we may consider the factors delineated in ORS 107.137(1):

"(a)  The emotional ties between the child and other family members;

"(b)  The interest of the parties in and attitude toward the child; and

"(c)  The desirability of continuing an existing relationship."

The best interests of the children are not determined by isolating one of these factors to the exclusion of the others. ORS 107.137(2).

■ ■ When other factors bearing on the parties' ability to provide for the best interests of the children are relatively equal, we give considerable weight in a custody

decision to which parent was the primary caretaker. *Van Dyke and Van Dyke,* 48 Or App 965, 970-71, 618 P2d 465 (1980), *rev den* 290 Or 491 (1981); *Derby and Derby,* 31 Or App 803, 806-07, 571 P2d 562, *modified* 31 Or App 1333, 572 P2d 1080 (1977), *rev den* 281 Or 323 (1978). Here, however, the fact that wife arguably performed the role of primary caretaker before the parties separated is not dispositive. The evidence shows that despite a heavy work and study load, husband also devoted a significant amount of time to the children and that they have strong emotional ties to him. He has been the primary caretaker of Rille since the parties separated in August, 1980. For several months after the separation, Sarah resided with husband, although wife did provide day care for her on weekdays. He has been the primary caretaker of both Rille and Sarah since April, 1981.

Other factors bearing on the best interests of the children are not equally balanced here. *See Van Dyke and Van Dyke, supra,* 48 Or App at 968-69. In *Whitaker v. Glerup,* 35 Or App 201, 204, 580 P2d 1073 (1978), we recognized that stability in the home can constitute a decisive factor in a custody dispute. In *Heinel and Kessel,* 55 Or App 275, 279-80, 637 P2d 1313 (1981), the parent demonstrating the stronger and more stable parental role was awarded custody. The evidence here shows that husband is better able to provide a stable environment for the children. In his home, family routines are observed at mealtime and bedtime and the children are expected to assume appropriate household responsibilities. Religious activities are a regular part of the family routine. Husband's weekend and vacation time is devoted to family activities or trips. Husband has maintained close ties between the children and their grandparents on both sides. The evidence demonstrates that the same level of stability is not found in wife's new household. We also find persuasive the opinion of Dr. Furchner, husband's expert witness, that the children "would settle in to their father's home more easily and with less distress."

Mother's sexual indiscretions in front of the children is another factor we consider. In *Niedert and Niedert,* 28 Or App 309, 559 P2d 515, *rev den* 277 Or 237 (1977), we recognized that evidence that mother carried on a *discreet*

sexual affair did not of itself justify a change of custody, absent a showing of a detrimental effect on the child. ORS 107.137(4). *See also Shrout v. Shrout,* 224 Or 521, 356 P2d 935 (1960); *Dahlman and Dahlman,* 20 Or App 375, 531 P2d 909 (1975). In this case, husband has made such a showing.

Prior to the parties' separation, wife was engaged in an extra-marital affair with Wayne Carr. Rille saw wife in bed with Carr on at least two occasions. On one occasion, especially traumatic to Rille, Carr's wife came to the house while wife and Carr were together in bed. Rille then had to tell Carr's wife that Carr was in bed with Rille's mother. Dr. Furchner also expressed concern about the amount of adult sexual activity that the children were exposed to in wife's new home. Additionally, she expressed concern about the amount of pressure applied on Sarah by Carr's daughter to engage in sexual play. Dr. Furchner opined that this pressure was the result of Carr's child having to handle more sexuality than she could deal with at her age. Wife's expert witness, Dr. Shelby, agreed that sexual relations around children is inappropriate behavior. She also testified that Rille was obviously disturbed by seeing wife and Carr together in ￼bed. Thus, the record contains expert testimony that wife's lifestyle is causing emotional damage to the children.

The parties presented numerous witnesses to support their respective positions that each should be awarded custody. Because of the trial judge's opportunity to see and hear these witnesses, we accord substantial weight to his conclusion that husband is the proper person to have custody of Rille and Sarah. *Smith and Smith,* 290 Or 567, 572, 624 P2d 114 (1981); *Meier and Meier,* 286 Or 437, 446, 595 P2d 474 (1979); *McFadden v. McFadden,* 206 Or 253, 257-58, 292 P2d 795 (1956). We conclude that it is in the best interest of Rille and Sarah that husband retain their custody. *Sullivan v. Sullivan,* 236 Or 192, 387 P2d 571 (1963).

■ ■ Wife next contends that the trial court erred in limiting her visitation to every other weekend and two weeks during the summer. Again, in determining visitation rights, the best interests of the children are our paramount consideration. *Kilpatrick and Kilpatrick,* 38 Or App

159, 161, 589 P2d 1153 (1979); *Pergament and Pergament,* 28 Or App 459, 559 P2d 942 (1977). On the record here, we are not persuaded that the visitation schedule devised by the experienced trial judge does not satisfy the present best interests of the children. Of course, that schedule is subject to review by the trial court upon motion of either party.

■    Wife last contends that the trial court's property division was inequitable. The parties' major asset is the family home. Husband testified the value of the home was $45,000; wife testified that its value was $50,000. The mortgage balance is approximately $21,000. Wife urges that it be sold and the net proceeds be divided equally. Wife was awarded a judgment lien against the real property of $10,500, payable within one year. Husband was ordered to pay family debts of about $12,000. $4,700 of that amount is for husband's law school expenses, and $2,800 is for his employment-related attorney fees. Wife was not ordered to pay any debts. Under the circumstances we are not convinced that we can make a significantly preferable disposition than that made by the trial court. *Haguewood and Haguewood,* 292 Or 197, 200-04, 638 P2d 1135 (1981).

■    Wife also contends that the court erred in not awarding her all the personal property she requested. Only a few of the requested items were not awarded to wife. The record satisfies us that it was proper for those items to be awarded to husband. ORS 107.105(c).

Affirmed. Costs to respondent.