Argued and submitted January 8, affirmed on appeal; on cross-appeal, judgment
modified to increase child support and affirmed as modified April 25, 1990

## In the Matter of the Marriage of

### DOTY,
*Respondent - Cross-Appellant,*
*and*

### DOTY,
*Appellant - Cross-Respondent.*

### (880413; CA A49041)

790 P2d 1167

Kurt Carstens, Newport, argued the cause for appellant -

cross-respondent. With him on the briefs were James Allen Hackett, and Litchfield, Carstens & Hammersley, Newport.

Louise Smith Waarvick, Newport, argued the cause for respondent - cross-appellant. With her on the brief was Waarvick & Waarvick, Newport.

Before Buttler, Presiding Judge, and Joseph, Chief Judge, and Rossman, Judge.

## JOSEPH, C. J.

Husband appeals from a dissolution judgment awarding wife $17,000 and child support of $300 per month for 10 months of each year and fixing his visitation schedule. He also claims that the judge made statements reflecting an improper judicial attitude and bias to such an extent as to constitute reversible error. Mother cross-appeals, challenging the award of visitation during December and the child support award.

Husband and wife were married in 1978, after living together a short time. Both were employed in the Portland area. When they married, husband owned a lot and a house under construction on it in Aloha. Wife contributed approximately $2,000 of the closing costs for the construction loan. Husband moved to Newport in late 1978, and wife joined him there in the early part of 1979. The house in Aloha was sold, and the parties purchased a residence in Newport. Husband was employed by Oregon State University Marine Science Center, and wife was employed by the Newport Police Department. When the couple's daughter was born in September, 1980, wife took maternity leave and in 1981 went back to work at the Police Department.

In February or March, 1982, husband moved into an apartment with Jane Fleischbein. Husband and wife continued to share a joint checking account and a VISA account and were beneficiaries of each other's life insurance policies. The premiums for the policies were automatically deducted from their joint checking account. After husband had moved out, the house was sold; the proceeds were deposited in the joint account. Husband withdrew $20,000 from the account to purchase a residential lot in January, 1983. He built a house on it with a veteran's loan. Wife's name was placed on the title at the request of the Veterans' Administration. Money was deposited and checks were written on the checking account for house expenses. Husband and Fleischbein moved into the house. However, husband continued to spend two to four nights a week at wife's home and to have sexual relations with her.

In August, 1984, husband purported to marry Fleischbein while still married to wife. Husband told wife that he and Fleischbein were involved in drug dealing and that he "married" her so that she could not testify against him. In

December, wife signed off the title on the new house, and Fleischbein's name was placed on the title. Husband eventually paid wife $12,500, ostensibly for her interest in the house. Husband also had a joint bank account with Fleischbein. Husband and wife each owned a car, and there was a pickup truck in both their names. In 1984, wife moved into husband's father's residence in Siletz rent free. Wife bought a house and rented it out. Husband was still spending two to four evenings a week with her and their daughter.

Husband and Fleischbein split up in the fall of 1986 and went through a dissolution proceeding in 1987.[1] In the winter of 1986, the child began to spend Wednesdays and Thursdays and every other weekend from Friday evening to Sunday evening with husband, an arrangement that effectively meant that she was spending about equal time with each parent. Husband dated other women until Linda McPhee and her daughter moved in with him in August, 1987. In the spring of 1987, wife discontinued seeing husband and did not allow him to spend time with their child at her home. In June, 1987, wife brought this dissolution action. In August, they agreed to continue the previous visitation arrangement, and husband agreed to pay wife $250 per month for child support.

At trial, husband agreed that wife should have custody of the child, but they disagreed over the amount of visitation that husband would have. Wife believed that it was in the best interests of the child to limit the visitation to less than the pre-trial time. She also sought child support and a $29,000 judgment as a property division. She originally asked for spousal support, but she dropped that claim at trial.

Husband contended that the existing visitation arrangement should be continued, but that child support should be decreased, because the child was in his care 50 percent of the time. He also contested wife's request for any property. The court awarded wife $17,000 in lieu of specific property, limited husband's visitation to one weeknight a week, every other weekend, July, December and alternating holidays (including Christmas) and ordered husband to pay $300 per month child support, except during the months of July and December.

---

[1] Husband paid Fleischbein $9,165 for her interest in the house.

■    In his first assignment of error, husband argues that the court erred in awarding him substantially less visitation than the evidence indicated was in the best interests of the child and in increasing child support. Basically, he contends that the evidence weighs in favor of an equal time visitation schedule.

Visitation serves two purposes: (1) It helps the child to know and share life with both parents; and (2) it recognizes and implements the rights of the parents to know and share the love of the child. Extensive visitation is preferred, if it is practicable and is in the best interest of the child. ORS 107.105(1)(b); *see Delf and Delf,* 19 Or App 439, 528 P2d 96 (1974). The objective is to furnish each parent "sufficient access to the child * * * for quality parenting time," as the legislature has stated it. ORS 107.105(1)(b). The conduct, marital status, income, social environment and life styles of the parties are relevant in determining custody, *if* the evidence shows that any of those factors cause or might cause emotional or physical damage to the child. ORS 107.137(3). The child's freely expressed preference, also apply in determining visitation. *See Moe and Moe,* 66 Or App 947, 951, 676 P2d 336 (1984).

The child had been on the equal visitation schedule for over a year by the time of the trial. Wife believed that she had noticed signs of stress in the child and had taken her to a mental health counselor, who testified that, in her opinion, the child was experiencing discomfort and stress from the current schedule, because she felt torn between the two parents. She recommended that the child live in one parent's home and visit the other. The counselor also testified, however, that visitation should be close to equal time.

Husband, wife and the child were examined by two clinical psychologists, both of whom also agreed that husband's visitation should be close to 50 percent of the time. Both indicated that the child's stress and depression were due in large part to the pending dissolution and the uncertainty with respect to where and with whom she would live and the visitation schedule. One testified that resolution of the dissolution would bring some relief to the child. Neither observed significant long-term depression or other serious problems. The child told both that she wished to continue the equal

visitation schedule. The experts testified that husband's behavior of being married to two women and exposing the child to several other relationships could result in her viewing personal relationships as fleeting, undependable and inherently dishonest.

The child's school teacher testified that the child had told her that she liked the visitation schedule as it was. The child gets along very well with both parents, and both have been involved in her school activities and her health care. Furthermore, the trial court found that husband's concern over visitation is genuinely motivated by love and affection for the child. Nonetheless, we are not persuaded that the trial court's visitation schedule fails to satisfy the child's best interest. *See Maddox and Maddox,* 56 Or App 345, 349, 641 P2d 665 (1982).

Essentially, husband argues that the pre-trial arrangement provided a mathematically exact division of the child's life into two halves, each to be spent exclusively in the company of one parent, and that that is the only way, or the best way, to protect the child's best interest. If we were to compare the pre-trial arrangement with the trial court's determination as a mathematical problem, we would have to decide whether the net difference in time between the two arrangements, which is a few weeks, in and of itself would be likely to have an adverse effect on the best interests of the child. The problem is not one of mathematics. The trial court's schedule provides the child substantially more *consecutive* time with her father than did the other schedule and protects her from the possibility of adverse effects from too frequent movements between the parents' homes. *See Pergament and Pergament,* 28 Or App 459, 462, 559 P2d 942 (1977). We cannot say that the best interest of the child was not observed and protected by the trial court.[2] We hold that the visitation schedule is appropriate in the circumstances.

Husband's arguments for changing the child support award need not be considered, because they are all based on his challenge to the visitation schedule, which we uphold.

---

[2] Husband devotes much effort to identifying actions and words by the trial judge that indicate bias against him. Even if he is persuasive on that point, which we need not decide, the judgment does not reflect bias.

■ In her cross-appeal, wife demonstrates that the appropriate child support award, under the formula established in *Smith v. Smith,* 290 Or 675, 626 P2d 342 (1981), is $400 per month. We modify the judgment to increase the support award to that amount, but we affirm the part of the judgment that requires that the support be paid only for the ten months during which the child will be living primarily with mother.[3]

■ Husband challenges the $17,000 judgment awarded wife. He contends that they were separated 6 out of the 10 years of marriage, were financially independent from one another and had previously divided their property; therefore, he argues, no judgment should be awarded. He asserts that, because there was a significant period of mutual financial independence, the presumption of equal contribution toward the acquisition of marital assets does not apply. ORS 107.105(1)(f); *see Lemke and Lemke,* 289 Or 145, 611 P2d 295 (1980). Wife argues that the evidence does not support a finding that there was a long period of separation and mutual independence or that they had divided their property in 1984.

We agree with wife. Although husband rented an apartment and lived with another woman, whom he eventually purported to marry, he continued to tell wife and the child that that arrangement was only temporary and that they would live together as a family once again. He spent 2 to 4 evenings with them while living with Fleischbein. Wife was on the title to the realty acquired after the alleged separation. When husband paid wife $12,500, it appears to have been to reimburse her for her contribution to the purchase of the lot, although it is not clear that that payment was a property settlement. They continued to have a joint VISA account until wife filed for dissolution. Husband also actively used the joint checking account through October, 1984, and, although to a far less degree, continued to make deposits in it through July, 1986. We affirm the $17,000 judgment against husband.

On appeal, affirmed; on cross-appeal, judgment modified to increase child support award to $400 per month and affirmed as modified. Costs to wife.

---

[3] The new support guidelines, established by Or Laws 1989, ch 811, §§ 1-5, do not apply here. *Butcher and Butcher,* 100 Or App 476, 786 P2d 1293 (1990).