Argued and submitted December 21, 1990, remanded for modification of judgment May 15, reconsideration allowed by opinion August 28, 1991

See 108 Or App 568, 816 P2d 695 (1991)

In the Matter of the Marriage of

Vonetta Ruth BURNS,
*Respondent,*

*and*

Russell Lee BURNS,
*Appellant.*

(88-3480; CA A65331)

811 P2d 654

Michael A. Yates, Portland, argued the cause for appellant. With him on the brief were Mark A. Johnson and Gevurtz, Menashe, Hergert, Larson & Kurshner, P.C., Portland.

Stephen D. Petersen, Rainier, argued the cause for respondent. On the brief were Steven B. Reed and Petersen & Reed, P.C., Rainier.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

**DEITS, J.**

Husband appeals a dissolution judgment. He assigns error to the trial court's property division giving the long half to wife, to the award of spousal support, to the visitation schedule and to the failure to suspend child support during extended summer visitation.

The parties were married in December, 1980, and separated in June, 1988. They have two children, ages 8 and 4. Husband, 32, is a supervisor for Boise Cascade Corporation and earns $4,500 per month. He earned a master's degree during the marriage. Wife, 37, has three children from a previous marriage. The youngest, age 13, lives with her. The father of those children is deceased, and wife receives Social Security benefits of $860 per month on behalf of the child living with her. She received her GED in 1977. Her only work experience before the parties' marriage was in child care and three months in a mill, where she earned approximately $9 per hour. She was laid off when the mill closed shortly before the parties' marriage. At the time of trial, she was cleaning houses and earning approximately $500 per month. The trial court awarded her $400 per month spousal support for two years, so that she would be able to "retrain for a job." Husband contends that the court erred in awarding any support, because she was already working and was capable of supporting herself. He claims that she could work at a higher wage than she earns cleaning houses, such as at the mill where she worked before their marriage.

A court may award spousal support that is just and equitable under all the circumstances. ORS 107.105(1)(d). Both parties are entitled to the "opportunity to achieve a standard of living not overly disproportionate to that enjoyed during the marriage." *Grove and Grove,* 280 Or 341, 347, 571 P2d 477, *mod,* 280 Or 769, 572 P2d 1320 (1977). In determining the amount to be awarded, the court may consider the need for retraining and education to allow each person to achieve that standard of living. ORS 107.105(1)(d)(E).

■     Wife was primarily a homemaker during the eight-year marriage. When she did work outside the home, she chose part-time employment that would allow her to care for her children while working. She has few skills, and her

experience is in low-paying jobs. The support that the trial court awarded will allow her to obtain training, which can give her the opportunity to obtain a standard of living not overly disproportionate to that enjoyed during the marriage. We will not disturb the trial court's award of spousal support.

Husband also assigns error to the property division. Before the marriage, wife owned a house in Netarts worth approximately $50,000, with a $15,000 equity. The house was a rental for most of the marriage. During the marriage, the parties received between $33,000 and $36,000 in rental payments and paid approximately $55,000 toward the mortgage, upkeep and expenses on the house. Due primarily to a decrease in property values and high interest rates, the house now has approximately the same value and equity as it had when the parties married.

The trial court awarded the house to wife and divided the rest of the property equally, which resulted in wife receiving assets worth $40,334 and husband receiving $23,604 in assets. The court explained:

"The petitioner will be awarded the 'long half' for the reason that she is to be the custodial parent, is some 5 years older than respondent, has a minimum of educational background upon which to rely, and did bring some $15,000 in assets into the marriage."

Husband contends that the court erred in dividing the assets unequally. He argues that the parties' finances were completely commingled and that it was inappropriate to treat the house as wife's separate asset. Further, he asserts that there is no justification for awarding wife the long half of the property.

■ ■ We conclude that the Netarts house should not be treated as wife's separate asset, even though she did bring it to the marriage, because, during the marriage, she conveyed it to husband and herself as tenants by the entirety. Consequently, the property became a marital asset, for which there is a statutory presumption of equal contribution. ORS 107.105(1)(f); *See Stice and Stice*, 308 Or 316, 325, 779 P2d 1020 (1989). Wife did not overcome that presumption here. Although she had $15,000 in equity in the house at the time of the marriage, substantial amounts were paid toward the

property during the marriage from joint funds. We hold that the parties have equal interests in the property and that husband's interest should be considered in the distribution.

■■ Nonetheless, we conclude that an unequal distribution of the marital assets is justified. ORS 107.105(1)(f) provides that the trial court must distribute the property in a manner "as may be just and proper in all the circumstances." Special circumstances may justify an unequal distribution of property. *Stice and Stice, supra,* 308 Or at 326; *Dull and Dull,* 104 Or App 275, 800 P2d 306 (1990); *Tannler and Tannler,* 68 Or App 432, 683 P2d 110, *rev den* 297 Or 547 (1984). Husband is well educated and his income, even after paying child support payments, is over six times wife's. Wife is five years older than husband, has few job skills, little employment experience and only a GED. The two-year spousal support award provides her at best a limited opportunity to obtain a standard of living not overly disproportionate to that enjoyed during the marriage. In awarding the house to her, the trial court appropriately gave her the option of living in it with the children or using it to bolster her income. *Olinger and Olinger,* 75 Or App 351, 707 P2d 64, *rev den* 300 Or 367 (1985).

We hold that the just and equitable property division is:

To wife:

(a)   The Netarts property in Tillamook County.

(b)   A money judgment against husband in the amount of $12,500, plus interest at a rate of 9 percent per annum from date of trial, to be paid in full before June 8, 1997, with monthly installments of a minimum of $285 beginning on June 8, 1992.

(c)   Her jewelry.

(d)   The 1987 Cavalier automobile.

(e)   Used furniture that she brought to the marriage.

(f)   The personal property in her possession.

To husband:

(a)   All of his 401K Plan valued by the trial court at the time of trial at $32,945.

(b)   All of his pension valued by the trial court at the time of trial at $2,264.

(c)   Used furniture that he brought to the marriage.

(d)   The 1983 Celebrity automobile.

(e)   The 1974 Porsche automobile.

(f)   Personal property in his possession.

That results in a distribution of $35,230 to wife and a net award to husband of $28,709, after subtracting the money judgment.

Husband also challenges the visitation schedule. The trial court awarded wife custody, as the parties agreed, subject to husband's visitation every other weekend and holidays. The court gave husband visitation for six weeks during the summer, subject to wife's having custody for two weekends during that period. He contends that the summer visitation should be extended to eight weeks. Visitation is determined "in the best interests of the children, insuring the noncustodial parent sufficient access to the child to provide for quality parenting time." ORS 107.105(1)(b); *Delf and Delf,* 19 Or App 439, 528 P2d 96 (1974). Although we understand husband's desire to spend more time with his children, we are not persuaded that the visitation schedule set by the trial court is not in the best interests of the children. *See Maddox and Maddox,* 56 Or App 345, 641 P2d 665 (1982).

■      Husband also contends that his child support payments should be suspended during his summer visitation. In *Doty and Doty,* 101 Or App 320, 790 P2d 1167 (1990), we suspended child support during extended visitation periods. That judgment, however, provided significantly more visitation with the noncustodial parent than is provided here. As we said in *Pergament and Pergament,* 28 Or App 459, 463, 559 P2d 942 (1977):

> "The custodial parent's obligation to provide for the child cannot conveniently be segregated on a month to month basis. That parent must provide shelter, clothing, toys, furniture and many other items that last beyond a month, and the cost of which must be amortized over a longer period of time than reflected in a monthly child support obligation. In the instance where the visitations are of a short duration and dispersed over a period of time it would impose a penalty on the child to suspend the support payments during visitation * * *."

We conclude that husband's child support payments should not be suspended during the children's summer visitation with him.

Remanded for modification of the judgment not inconsistent with this opinion. No costs to either party.