Argued and submitted December 18, 1990, affirmed August 28, reconsideration denied October 23, petition for review denied November 26, 1991 (312 Or 526)

In the Matter of the Marriage of

## Judith A. WOLHAUPTER-HEINZEL,
*Respondent,*

*and*

## Rodger D. HEINZEL,
*Appellant.*

(D8811-68362; CA A63385)

816 P2d 672

Wade V. Regier, Portland, argued the cause and filed the brief for appellant.

William J. Howe, III, Portland, argued the cause for respondent. With him on the brief was Howe, Harris & Vigna, Portland.

Before Richardson, Presiding Judge, and Joseph, Chief Judge,* and Deits, Judge.

JOSEPH, C. J.

---

* Joseph, C. J., *vice* Newman, J.

## JOSEPH, C. J.

Husband appeals a dissolution judgment that awarded wife her uncommingled pre-marital assets, two thirds of the marital assets and $50,000 in attorney fees and costs. The court also denied husband spousal support and charged him with numerous debts. On *de novo* review, we affirm.

Husband and wife married in 1980, when wife was 24 and husband was 34. They have no children. Husband had been working in the aerospace industry, but he gave up a job that paid about $24,000 a year to move with wife to Oregon. After that, neither party worked outside the family businesses until the dissolution.

Husband brought somewhere between $17,600 and $70,000 to the marriage. Wife was a one-third beneficiary of two trusts created by relatives. Her other property was conservatively valued at $919,321. In August, 1980, at husband's insistence, she obtained possession of all of her stocks and bonds. Husband liquidated them for $550,000 and deposited the cash, together with his assets, in a joint savings account. Wife also later contributed large amounts of her resources to joint accounts:

1. $200,474 income from the Andrew H. Smith Trust;

2. $96,914 income from the Gladys Slyfield Smith trust;

3. $479,403 of the corpus of the Gladys Slyfield Smith trust;

4. $296,401 of rental income;

5. $435,000 of proceeds from the sale of her interest in certain real property; and

6. $74,343 from cashing in her life insurance.

Her total contribution was $2,501,857. Husband earned around $70,000 during the marriage, so his total contribution was somewhere between $87,600 and $140,000.

Husband took control of wife's property, except for the trust interests and one of the rental properties, some of her mineral rights and three life insurance policies. He converted the assets into cash or purchased other, jointly held

assets. In 1986, he created a corporation to operate a restaurant. He used $275,000 of wife's money to pay for and remodel the restaurant and placed wife *and* his girlfriend on the board of directors, but he issued stock only in his name and gave only himself access to the $50,000 line of credit that he extended to the corporation. Without wife's knowledge, he used their joint assets to purchase a house in which the girlfriend lived without paying rent for a number of months. The restaurant failed. Husband and wife also operated a gun shop that incurred significant losses from 1982 on.

Husband makes numerous assignments of error, which fall into four groups. First, he assigns error to the court's delineation of the marital estate and its valuation and the division of the marital property. The court excluded wife's Andrew H. Smith Trust interest and her share of one of the rental properties from the estate. It also excluded her mineral rights and three life insurance policies, as well as a small trust fund. Wife's interest in the trust predates her marriage, and she cannot enjoy it until 2007. The rental property was purchased in 1965 as part of a tax-deferred exchange. Wife, her two siblings, and Andrew H. Smith each contributed one-quarter of the price. Smith's share eventually became part of the corpus of the trust that he created. Wife's father held her share in trust until 1982, when husband insisted that he transfer title to her. The mineral rights and the life insurance policies also predate the marriage. The small trust account funds, less than $2,000, were never commingled.

Husband argues that the court should have included all of wife's pre-marital and separate property as part of the marital estate, because ORS 107.105(1)(f) gives the court jurisdiction over all of the parties' assets. Of course, the court was exercising that jurisdiction when it declared the trust and the rental property to be pre-marital property not subject to division as part of the marital estate. The court designated the other assets at issue as wife's separate property.

The court did not err in excluding the property at issue from the marital estate. Husband made no contribution to acquiring or managing those assets[1] and was not the

---

[1] Husband contends that wife asked him to become involved in managing the trust assets. His documentary evidence consists of a comic Valentine from her with a

subject of any donative intent. *See Pierson and Pierson,* 294 Or 117, 123, 653 P2d 1258 (1982). Without persuasive indications of the other person's involvement or entitlement, premarital or separate property is usually awarded to the owner, unless that would make it impossible for the court to fashion a division that would leave both parties self-sufficient. *Webber and Webber,* 99 Or App 703, 784 P2d 111 (1989), *mod* 102 Or App 93, 792 P2d 484, *rev den* 310 Or 282 (1990). That is not the case here.

■ Husband argues that the rental property is not premarital property, because wife's father gave it to her during the marriage. The 1982 transfer of title, however, merely passed legal title to wife, who had held a beneficial interest in it since its 1965 purchase. The court did not err in considering the property to be pre-marital property.

■ Husband also assigns as error that the court awarded wife the appreciated value of her pre-marital assets. He relies on *Crislip and Crislip,* 86 Or App 146, 738 P2d 602 (1987), and *Olinger and Olinger,* 75 Or App 351, 707 P2d 64, *rev den* 300 Or 367 (1985). Both of those cases involved marital estates that had increased in value. Moreover, *Crislip* involved appreciation in pension funds that the husband had contributed to through his professional corporation. We held those funds to be part of his earnings and, therefore, part of the marital estate, to which the statutory presumption of equal contribution applied. In *Olinger,* the issue was appreciation in the value of the husband's pre-maritally owned automobile dealership. The wife had worked in the dealership, sometimes without pay, and had contributed her salary to the family accounts. We concluded that she should receive half of the appreciation because of her contributions. *See also Kampmann and Kampmann,* 108 Or App 407, 816 P2d 642 (1991). Neither case is at all like this one, and the trial court properly excluded the appreciation of the property from the property division.

Because the remainder of the parties' property was commingled, the court considered all of it as in the marital estate. The court awarded wife approximately two thirds of it. Husband assigns error to that distribution on several

printed message that contained the line "We've shared our money."

grounds. First, he contends that the distribution was grossly disproportionate and unfair, because it is inconsistent with other cases involving similar facts. His argument is that, because the court set aside for wife all of her pre-marital assets, he should receive more than half of the marital estate in order to even things up between them.

In dividing marital property, a court must do what is "just and proper in all the circumstances." ORS 107.105(1)(f). The statutory presumption is that the parties contributed equally to the marital property and should therefore receive equal shares. ORS 107.105(1)(f). A party can overcome that presumption by showing that she brought more to the marriage than did the other. *Langan and Langan,* 89 Or App 320, 748 P2d 1035, *rev den* 305 Or 433 (1988). Wife has overcome the presumption by showing that virtually all of the marital property originated from her beneficial interest in two trusts and from her other separate real and personal property interests. Moreover, even if she had not overcome the presumption, the court was warranted in making the division because of husband's waste and misappropriation of marital assets, in instances with which the record is rife. *See Stice and Stice,* 94 Or App 434, 436, 765 P2d 246 (1988), *aff'd* 308 Or 316, 779 P2d 1020 (1989).

Husband argues that the court left him with obligations that it failed to consider specifically in the property division. The record shows that the court did consider all of the debts listed by husband.

Husband also asserts that the court improperly valued the gun shop business in making the marital property division. Wife indicated that she intended to continue to operate the business. The court valued it at $155,898, the bulk liquidation value of its inventory. Husband asserts that the "book value" (*i.e.,* the retail value) of the inventory is at least $421,000. He contends that, because wife wants to continue to operate the store, the court should have valued the business at that figure, which represents what the approximately 800 guns might bring at individual sales under the best of conditions. He fails to take into account that the bulk liquidation value reflects what someone might receive for the guns in a lump sale, without having to incur the costs

of operating the business. That method of valuation is reasonable in view of the fact that the gun shop had lost money every year since 1982, in amounts between $30,000 and $60,000. The court did not err in the valuation.[2]

Husband's last assignment of error with respect to the property division is that the court erred in determining the value of the parties' marital assets and in failing to award him at least $1,196,419 of those assets. Part of his blanket assignment reiterates objections to the court's determination of wife's pre-marital and separate property and needs not be discussed again. Part also merely reiterates the challenge to the valuation of the gun shop. He also presumes, without support in the evidence, that wife has $109,000 in undisclosed assets, but we need not address that contention.

■■ Husband argues that the court should have divided the 1989 distribution from the Andrew H. Smith trust, about $50,000. It had not occurred by the time of trial and was properly not included in the marital estate. Husband also asks that we readjust the court's determinations of tax liabilities, because wife in fact will owe about $60,000 less in taxes than the court had estimated. He offers little or no support for his figures and apparently did not take interest and penalties into account. In any event, the parties stipulated that they would accept the accuracy of their accountant's estimate, which was the figure that the court used.

■ Finally, husband asserts that the court erred in failing to determine the value of each of the parties' separate assets. We conclude that the court fashioned a property division that was just and proper in the circumstances. Its failure to assign a specific value to every asset separately was not error.

Husband assigns error to the court's denial of his claim for spousal support. At trial, he asked for five years' support, but on appeal he asks for permanent support and

---

[2] Husband relies on *Hinrichs and Hinrichs,* 37 Or App 833, 837, 588 P2d 130 (1978), for the proposition that it is improper to use the liquidation price to value a business in the absence of evidence that the parties intend to liquidate. That reliance is misplaced. The business in that case was a going concern at the time of trial, with a valuation greater than its asset value. The sole provable value of the business here was in its inventory. It had no goodwill whatsoever. It was not a self-sustaining enterprise but was, rather, a money sinkhole.

retraining funds. He claims that, in denying support, the court improperly considered only his physical ability to be employed. That is incorrect. The court stated that it found no basis in any of the evidence to order support for husband. We agree.

 The goal of spousal support is not to equalize the parties' incomes or to allow a former spouse to look to the other indefinitely for support, if self-support at a reasonable level is possible. *Graf and Graf,* 97 Or App 425, 428, 776 P2d 46 (1989). Its purpose is to allow the dependent spouse to maintain "a standard of living not overly disproportionate to that [he] enjoyed during the marriage." *Grove and Grove,* 280 Or 341, 350, 571 P2d 477, *mod* 280 Or 769, 572 P2d 1320 (1977). Husband contends that his health makes it impossible for him to work, but his own physician testified that he is capable of working. Husband told the court that, during the marriage, he had worked between 60 and 100 hours a week in the family businesses. His vocational expert said that he had the ability to find work and keep a job and had an impressive list of transferrable skills. The property division gives husband assets worth somewhere between $400,000 and $500,000, including, as potentially income-producing property, two restaurants and eight rental units. He failed to demonstrate any need for spousal support, and the court did not err in denying it.

Husband assigns as error that the court awarded wife $50,000 in attorney fees. He asserts that they were awarded without a proper factual basis. The parties, however, had stipulated that the court could award fees without hearing expert testimony. Husband's sole ground of objection, therefore, seems to be that counsel for wife did not submit a "cost bill." Husband did not object to that in the trial court and has not preserved the alleged error for review.

 Husband's final assignment is that the court erred in denying his motion for a new trial under ORCP 64. He alleges that wife perjured herself with respect to about $200,000 worth of jewelry and other items that she "misappropriated." He claims that the court resolved all credibility issues in her favor and penalized him by the property division because of that. He also argues that the court overestimated the parties'

tax liability, which it assigned to wife, and underestimated husband's financial obligations.

Husband and wife each made allegations at trial that the other was secreting assets. The court's judgment provided that marital property produced by either party after trial would be divided equitably in a subsequent hearing. Wife produced additional jewelry after trial, and the court divided it in a hearing to which the parties stipulated. There is no basis in the record for husband's claim that wife committed perjury with respect to those assets. They were eventually divided in a manner foreseen in the dissolution judgment. They do not qualify as "new evidence" for the purposes of ORCP 64.

The trial court specifically denied that it had based the property division on husband's lack of veracity. We find no indication in the record to the contrary. There is also no evidence that the court's estimated tax liability is erroneous. First, as we have already pointed out, the parties effectively stipulated to the figure that the court used. Second, although wife had filed a return showing a lesser liability, interest and penalties had not yet been finally assessed. As to the financial obligations that the court imposed on him, husband alleges that the court did not take them into account in the property division. That is not accurate. Husband has failed to persuade us that a new trial would be appropriate because of any of the reasons listed in ORCP 64.

Affirmed. Costs to wife.