Argued and submitted June 2, 1993, reversed and remanded in part; otherwise
affirmed on appeal and on cross-appeal June 22, 1994

In the Matter of the Marriage of

Carolyn Ann ROSSI,
*Respondent - Cross-Appellant,*

*and*

Stephen J. ROSSI,
*Appellant - Cross-Respondent.*

(9104-62706; CA A76338)

876 P2d 820

Ivan M. Karmel argued the cause and filed the briefs for appellant - cross-respondent.

Jack L. Kennedy argued the cause for respondent - cross-appellant. With him on the brief were Susan E. Watts and Kennedy, King & Zimmer.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

LANDAU, J.

Edmonds, J., concurring in part; dissenting in part.

**LANDAU, J.**

Husband appeals and wife cross-appeals from a dissolution judgment. On *de novo* review, ORS 19.125(3), we modify the judgment and remand for recalculation of child support.

The parties' 19-year marriage was dissolved in November, 1991. They have two children, ages 13 and 9. At the time of trial, both husband and wife were 41 years old.

Husband earned his bachelor of science degree before marriage. He is the national account manager for Unijax Corporation, where he has worked for 17 years. At the time of trial, his gross monthly income was $5,863, with a net of $4,200.

Wife was unemployed at the time of trial. After marriage, she worked as an instructional aide for an elementary school for four years and then for a local television station in an "office job" for one year. In 1978, she received a bachelor's degree in social sciences. She worked part time for a finance company for about 10 months, and for a travel agency for 18 months. Since the birth of the parties' second child in 1983, wife has not been significantly employed outside the home.

In January, 1991, husband was transferred to Florida, and the parties moved there. Two months later, wife suffered a nervous breakdown and returned to Oregon with the children. Following a period of hospitalization, she returned to Florida, but ultimately she and the children returned to Oregon, and she initiated dissolution proceedings.

At trial, wife's expert testified that, although wife had recently suffered the nervous breakdown, she was able to seek and to maintain full-time employment. Her vocational expert testified that, with one year of education at a private vocational college, wife's employment opportunities as a medical secretary would be "very good," and that within approximately six years, she could earn as much as $28,000 a year, plus $5,000 in benefits.

The trial court awarded wife custody of the two children, with husband receiving visitation rights, including a

right of visitation during the summer. He was ordered to pay the cost of transporting the children to and from Florida and was allowed to withhold one month's child support to apply to the cost of travel. Wife, in turn, was ordered to file a satisfaction of judgment for the one month's support, to the extent that husband exercised the right of summer visitation. The trial court awarded child support in accordance with the uniform support guidelines formula. It also awarded wife the right to claim the tax exemption for the younger of the two children and husband the right to claim the exemption for the older child.

The trial court's distribution of assets and liabilities resulted in a net award of $97,745 to wife and $143,180 to husband. Wife also received an equalizing judgment of $20,974 and an "education judgment" of $5,000 to pay her expenses in attending school, as suggested by wife's vocational expert. The court awarded wife spousal support of $1,800 per month for five years, followed by $500 per month indefinitely.

■    Both parties assign error to the award of spousal support. Husband argues that the award is too high and is required for too long. According to husband, the award should be modified to $1,500 per month for two years, followed by $1,000 per month for two more years, and then $500 per month for four years, at which time the obligation should terminate. Wife argues that the award is too low and drops too precipitously too quickly. According to wife, the award should be modified to $1,800 per month for five years, $1,200 a month for five years, and $750 per month thereafter.

■    Spousal support may be awarded to one party in "such amount of money for such period of time as it may be just and equitable for the other party to contribute[.]" ORS 107.105(1)(d). As we said in *Christensen and Christensen*, 123 Or App 412, 859 P2d 1192 (1993), in setting the amount and duration of spousal support:

"We do not attempt merely to eliminate any disparities in the parties' incomes or to enable one spouse to look to the other indefinitely for support. *Wolhaupter-Heinzel and Heinzel*, 108 Or App 514, 521, 816 P2d 672, *rev den* 312 Or 526 (1991). We set the award at an amount that is reasonable and that

will enable the party receiving the support to enjoy a standard of living that 'will not be overly disproportionate' to what was enjoyed during the marriage, to the extent that is practicable. ORS 107.105(1)(d)(F); *Grove and Grove,* 280 Or 341, 350, 571 P2d 477, *mod* 280 Or 769, 572 P2d 1320 (1977). We set the duration of that award 'on terms that are equitable between the parties,' taking into account both need and ability to pay and keeping in mind 'the goal of ending the support-dependency relationship within a reasonable time if that can be accomplished without injustice or undue hardship.' *Grove and Grove, supra,* 280 Or at 353." 123 Or App at 416.

In determining the amount and duration of spousal support, we consider, among other things, the length of marriage, the age and health of the parties, the number of dependent children, the earning capacity, employment skills and work experience of each party and the extent to which the earning capacity of a party is impaired because of an extended absence from the job market to attend to family needs. ORS 107.105(1)(d); *Robinson and Robinson,* 125 Or App 244, 247, 865 P2d 411 (1993); *Christensen and Christensen, supra,* 123 Or App at 416.

In this case, the parties are relatively young and healthy. Although wife suffered a nervous breakdown shortly after husband's transfer to Florida, testimony of her own expert indicated that, by the time of trial, she was not impaired from obtaining regular, full-time employment. Husband has a college degree and a stable, long-term job from which he earns a net income of $4,200 each month. Wife also has a college degree. She worked during at least seven of their 19 years of marriage at various office jobs. There is no doubt that she is employable and capable of self-sufficiency. Wife's vocational expert testified in support of an educational plan, designed to enable her to become employed as a medical secretary. According to that expert, with approximately one year of school and six years of experience, wife could earn as much as $28,000 a year, plus $5,000 a year in benefits. To finance the education plan, wife received, in addition to spousal support and her portion of the marital assets, a $5,000 education judgment.

Given wife's age, past education and her future educational plans, her employment history, her prospects for

self-sufficiency at a reasonable income within six to eight years, and the age of her children, an award of indefinite support is not appropriate. Accordingly, we conclude that the judgment should be modified to award wife $1,800 per month for two years, followed by $1,000 per month for two years, and then $750 per month for four years. In view of the modification of spousal support, child support will need to be recalculated on remand.

■ Both husband and wife also assign error to the trial court's decision to award each of them a tax dependency exemption for the children. Husband wants both exemptions, as does wife. Husband argues that he is entitled to both, because he earns more money and, consequently, is in a better position to realize the benefits of the exemptions. In the alternative, husband argues that he should be awarded the right to claim the exemption for the younger of the two children. Wife argues that she should receive the right to claim both, because she earns less money and needs the benefit of the exemptions more than husband does.

■■ The right to claim tax exemptions for a dependant child may be awarded to either party. *Richmond and Richmond*, 103 Or App 55, 59, 795 P2d 1104 (1990). The appropriateness of an award to one party or another necessarily depends on the facts of each case. Based on our review of the record in this case, we find no reason to disturb the trial court's allocation of the right to claim tax exemptions for the children. Wife also argues that, if she is not awarded the right to claim the second exemption, we nevertheless should remand for consideration of the tax consequences of awarding it to husband as a possible basis for finding that the amount of child support that is presumed correct under the guidelines is inadequate. We agree. *Hay and Hay*, 119 Or App 372, 374, 850 P2d 410 (1993); *Ranes and Ranes*, 118 Or App 264, 269, 846 P2d 1195 (1993).

■ Wife assigns error to the trial court's decision to require her to file a satisfaction of judgment for one month's child support to offset husband's obligation to pay for transporting the children to and from Florida for summer visitation. Wife argues that the credit probably will be a windfall to husband, because he will in all likelihood use frequent flyer credits accumulated from his extensive business travel to

finance the children's visits. She also argues that her obligations to provide housing, clothing, medical care and the like will continue throughout the six-week period of visitation and that those considerations led us to refuse to allow a credit against a noncustodial parent's child support obligations in *Burns and Burns*, 107 Or App 167, 811 P2d 654, *mod* 108 Or App 568, 816 P2d 695 (1991). Husband argues that we allowed just such an adjustment in *Doty and Doty*, 101 Or App 320, 790 P2d 1167 (1990), and that *Burns and Burns, supra*, is distinguishable because of the relatively short period of summer visitation involved in that case.

In *Doty and Doty, supra*, the husband was awarded visitation of the child for two months each year. The trial court awarded the wife child support for all but those two months each year. We increased the award but upheld the suspension of the award for the two months during which the husband had visitation. Our only comment on the issue was that the uniform child support guidelines did not apply. 101 Or App 326 n 3. In *Burns and Burns, supra*, we held that a noncustodial parent's obligation to care for the children during a six-week summer vacation did not justify a suspension of his child support obligations. We distinguished *Doty and Doty, supra*, on the ground that the trial court had provided "significantly more" visitation with the noncustodial parent in that case. We need not decide whether the two cases are, in fact, distinguishable on their facts, because neither is controlling. In neither *Burns* nor *Doty* did ORS 25.280 and the uniform child support guidelines apply. In this case, the guidelines are dispositive.

ORS 107.105(1)(c) provides that the trial court may order "such amount of money, in gross or in installments, or both, as constitutes just and proper contribution toward the support and welfare" of the children. It further provides that

"[t]he court, in determining the amount to be paid, *shall* use the scale and formula provided for in ORS 25.275 and 25.280." (Emphasis supplied.)

ORS 25.280 provides, in part:

"In any judicial or administrative proceeding for the establishment or modification of a child support obligation under ORS [chapter 107], the amount of support determined by the formula * * * *shall be* presumed to be the correct

amount of the obligation. This *shall be* a rebuttable presumption and a written finding or a specific finding on the record that the application of the formula would be unjust or inappropriate in a particular case shall be sufficient to rebut the presumption. The following criteria shall be considered in making the finding * * *." (Emphasis supplied.)

The statute then enumerates ten criteria, one or more of which may provide justification for a departure from the amount of support dictated by the formula. ORS 25.280 (1)-(10).

Consistent with the statute, the uniform child support guidelines provide that child support must be calculated in accordance with the formula required by the statute, and that, only if the trial court expressly finds that the amount required by the formula is unjust or inappropriate, based on one or more of the ten statutory criteria, can the trial court depart from the amount determined by the formula. OAR 137-50-330(2).

On its face, the statute and the regulations impose a mandatory, mechanical, two-step process. When setting child support amounts, trial courts *must* use the formula required by the statute, unless the amount dictated by the formula is expressly found to be unjust or inappropriate, based on one or more of the ten factors enumerated in the statute.

Directly on point in this regard is our recent decision in *Bell and Johnson*, 121 Or App 125, 854 P2d 479 (1993). In that case, the trial court awarded custody of the child to the mother, who lived in Oregon, and awarded substantial visitation during the summer to the father, who lived in Alaska. The court initially calculated the father's child support obligation according to the formula contained in the uniform child support guidelines. It then awarded the father a credit against that award to offset the transportation costs associated with the summer visits in Alaska. We held that the trial court could not require such a credit without first finding that the presumptively correct amount of child support was unjust or inappropriate, after considering the ten criteria enumerated in the statute and the guidelines. 121 Or App at 127.

In this case, the facts are similar in all material respects. The trial court properly calculated an award of child

support in accordance with the formula required by the statute and the guidelines. However, it then allowed a credit against that award to offset husband's visitation expenses. The trial court made no written or specific findings on the record that the presumptively correct award was unjust or inappropriate. As in *Bell and Johnson, supra*, that was error. It may be that husband's visitation expenses constitute a "special hardship" to him, or fall within some other of the ten criteria enumerated in the statute as basis for departing from the presumptively correct amount of child support. However, we will not address that issue for the first time on appeal.

■   The dissent argues that the trial court's departure from the presumptively correct amount of child support without expressly finding the amount to be unjust or inappropriate was not error. According to the dissent, trial courts have the authority to make adjustments to the presumptively correct child support award in order to accommodate their decisions concerning property division, spousal support or visitation. The dissent asserts that trial courts always have had such authority, and that there is nothing in the language or the history of the federal law on which ORS 25.280 was predicated, in ORS 25.280 itself or in the guidelines, to indicate that either Congress or the Oregon legislature intended to take it away. The dissent is wrong.

■   First, the federal law in response to which ORS 25.280 was enacted requires that child support be calculated exclusively on the basis of the guidelines. The Family Support Act of 1988, 42 USC § 667, plainly provides that:

"(a)   Each State * * * *must* establish guidelines for child support award amounts within the State. * * *

"(b)   * * *

"(1)   * * *

"* * * * *

"(2)   There *shall be* a rebuttable presumption, in any judicial or administrative proceeding for the award of child support, that the amount of the award which would result from the application of such guidelines is the correct amount of child support to be awarded. A written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case, as determined under criteria established by the State, shall be

sufficient to rebut the presumption in that case." (Emphasis supplied.)

The legislative history of that law confirms that Congress intended that state courts do not retain any authority to ignore the guidelines or to make "adjustments" to the amounts otherwise dictated by the guidelines, absent an express finding that the guidelines produce an award that is unjust or inappropriate. The Senate Report on the bill, for example, explains that, before enactment of the 1988 law, child support guidelines were "not binding on judges and others who determine award amounts." In contrast, the Senate Report asserts that, under the new law,

"guidelines developed by States *must* be applied by judges and other officials in determining the amount of any child support award *unless* the judge or official, pursuant to the criteria established by the State, makes a finding that there is good cause for not applying the guidelines." 5 US Code Cong & Adm News 2776, 2794 (1988) (S Rep No 100-377, sec 103, 100th Cong 2d Sess 17 (1988)). (Emphasis supplied.)

*See also* H Conf Rep No 100-998, 100th Cong 2d Sess 91 (1988).

■    Second, the dissent wrongly concludes that state law does not require calculation of child support exclusively by application of the guidelines. As we have noted, the language of ORS 25.280 and the guidelines unambiguously require courts to award the amount of child support presumed to be correct under the guidelines unless there is a finding that that amount is unjust or inappropriate. The Supreme Court, in fact, recently observed in *Perlenfein and Perlenfein*, 316 Or 16, 848 P2d 604 (1993), that the legislative history of ORS 25.280 emphasizes the exclusive nature of the two-step process set out in the statute:

"We note that the legislative history of ORS 25.270 *et seq* (1989 House Bill 2455) places considerable emphasis on the two-step nature of the process of determining a child support obligation: (1) the determination of a presumptively correct child support amount by application of the formula established in OAR 137-50-330(1) and (2) the rebuttal, if any, of that presumed amount under the criteria established in OAR 137-50-330(2)(A) through (J). *See, e.g.*, Minutes, House Committee on the Judiciary, Subcommittee on Family Justice, February 17, 1989, p 9 and Exhibit J; Staff Measure

> Summary, HB 2455, 1989 House Committee on the Judiciary (Exhibit H); Staff Measure Summary, HB 2544, 1989 Senate Committee on the Judiciary (Exhibit J); House Floor Debate, April 10, 1989, Tape 13, Side 2; Senate Floor Debate, June 26, 1989, Tape 214, Side A; House Floor Debate, June 27, 1989, Tape 34, Side 1." 316 Or at 25 n 8.

Moreover, we have, most recently in *Bell and Johnson, supra,* consistently construed the language of ORS 25.280 and the guidelines in that fashion. So also have the courts in other jurisdictions. *See, e.g., Ex Parte Kiely,* 579 So 2d 1366 (Ala Civ App 1991); *In re Marriage of Miller,* 790 P2d 890 (Colo Ct App 1990); *In re Marriage of Hornung,* 480 NW2d 91 (Iowa App 1991); *Richardson v. Richardson,* 12 Va App 18, 401 SE2d 894 (1991).

The dissent insists that the law requires only that the "amount to be paid" be established in accordance with the guidelines and that nothing in the law says that trial courts cannot

> "make other provisions in the judgment that may *indirectly* impact the support obligation that is owed, once the amount is *initially* determined." 128 Or App at 550. (Emphasis supplied.)

The dissent assumes that, by characterizing an adjustment to the amount of child support an obligor is ordered to pay as "indirect," the adjustment need not conform to the requirements of ORS 25.280, because such "indirect" adjustments are not really what the statute means by determining the "amount to be paid."

The language of the statute does not support that reading. In the real world, such credits against an award of child support determine the amount of child support the obligor is required to pay under the terms of the dissolution judgment. Whether they are characterized as "direct" or "indirect," their effect is the same: They determine the "amount to be paid." In this case, for instance, the credit that the dissent considers to be permissible explicitly reduces husband's child support obligation, dollar for dollar, to offset his visitation travel expenses.

Moreover, the dissent's proposed construction, by its own terms, relies on the insertion of language in the statute

that simply is not there. The dissent asserts that trial courts may make adjustments to child support awards "once the amount is *initially* determined." 128 Or App at 550. (Emphasis supplied.) The statute does not, however, require the application of ORS 25.280 and the guidelines only for an "initial" determination of child support. The statute requires the application of ORS 25.280 and the guidelines in "determining the amount to be paid," without qualification. ORS 107.105(1)(c). Any other reading of the language would render meaningless the requirement that child support be "determined" in accordance with ORS 25.280 and the guidelines. Trial courts would be free to adjust child support awards as they see fit, as long as they have made an "initial" determination in accordance with the law. That is precisely the sort of *ad hoc* determination of child support awards the current law was designed to prevent. *See* S Rep No 100-377, 100th Cong 2d Sess 17 (1988).

As for *Bell and Johnson, supra,* the dissent argues that it is distinguishable, because in that case the trial court did not make the reduction in child support conditional on the travel expenses being incurred. The dissent does not explain the significance of that distinction in terms of the legislature's grant of authority to the courts. It merely asserts that allowing trial courts to reduce child support awards only after finding that the presumptively correct amount is unjust or inappropriate "will not always meet the needs of the parties or facilitate judicial administration." 128 Or App at 553. That may or may not be so. To the extent that it is, it is a matter for the legislature to resolve, by providing the courts with greater flexibility in setting child support awards. Meanwhile, the legislature has not done that, and it is not for us to remedy possible inadequacies in the current law by judicial fiat.

The dissent further argues that failing to allow the trial court to reduce child support to offset transportation expenses associated with visitation would inhibit the court's ability to implement the statutory directive to award visitation to noncustodial parents consistent with the

"best interest of the child, insuring the non-custodial parent sufficient access to the child to provide for quality parenting time." ORS 107.105(1)(b).

That argument makes no sense. It assumes as its premise that requiring the trial court to reduce presumptively correct child support awards only in accordance with the guidelines necessarily deprives husband of the credit for travel expenses. There is simply no reason to assume that trial courts cannot justify, in appropriate cases, credits for such extraordinary visitation travel expenses within the context of the child support guidelines. Whether this is such an appropriate case is precisely the question the trial court should address on remand.

The dissent finally asserts that requiring the trial courts to comply with ORS 25.280 and the guidelines in determining whether to adjust an award of child support to account for visitation travel costs "contravenes the broad grant of authority by the legislature to the courts to fashion a 'just' remedy." 128 Or App at 553. The dissent, however, ignores the fact that ORS 25.280 and the guidelines expressly preserve the trial courts' authority to make adjustments to an award otherwise presumed correct, if they make a finding that the award is not "just." ORS 25.280; OAR 137-50-330(2). In this case, the trial court failed to do that and, for that reason, the matter must be remanded.

We have considered the parties' other assignments of error on appeal and on cross-appeal and found that they do not warrant discussion.

On appeal and on cross-appeal, reversed and remanded for entry of modified judgment awarding wife spousal support of $1,800 per month for two years, effective on issuance of this opinion, $1,000 per month for two years, and $750 per month for four years, for recalculation of child support, and for reconsideration of tax exemptions and abatement of child support; otherwise affirmed on appeal and on cross-appeal. No costs to either party.

**EDMONDS, J.,** concurring in part; dissenting in part.

I agree with all of the majority's opinion except its holding that the trial court lacked authority to require wife to file a satisfaction of judgment for one month's child support to offset husband's obligation in the event that husband incurs transportation costs during the summer visitation

period. The majority reasons that the court's authority to make such an order is circumscribed by the uniform child support guidelines and that, therefore, it must address on remand whether husband's expense for airfare for the children is a basis for a departure from the otherwise presumed correct amount of child support. I submit that the majority's reasoning extends the reach of the guidelines beyond that intended by the legislature.

In support of its interpretation, the majority relies on the language of the Family Support Act of 1988, 42 USC § 667(b)(2), 128 Or App at 544, language from a Senate Report, 128 Or App at 545, the language of ORS 25.280 and our holding in *Bell and Johnson*, 121 Or App 125, 854 P2d 479 (1993). As the texts of the statutes are examined, it is important to keep in mind certain legal axioms that apply. Any statutory analysis begins with the text and context of the pertinent statute. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). We are constrained by ORS 174.010 from doing other than declaring "what is, in terms or in substance, contained therein, [and we are] not to insert what has been omitted * * *." Finally, we are required to read statutes together so as to give effect to all and thus carry out the full intent of the legislature. *Porter v. Hill*, 314 Or 86, 91, 838 P2d 45 (1992).

The authority of a trial court to provide for child support in a dissolution judgment is found in the first sentence of ORS 107.105(1)(c). It provides that the court may decree "such amount of money, in gross or installments, or both, as constitutes just and proper contribution toward the welfare and support of such children." The statute is about child support. It is not about visitation rights or about the court's authority to effect visitation. That authority is found in ORS 107.105(1)(b), a provision that I will discuss later. The final sentence of ORS 107.105(1)(c) tells the court how to determine the amount of child support that can be ordered pursuant to the authority granted in the first sentence. "The court, *in determining the amount to be paid*, shall use the scale and formula provided for in ORS 25.275 and 25.280." (Emphasis supplied.)

Before the enactment of the child support guidelines, the amount of child support was determined by use of the

formula developed in *Smith v. Smith*, 290 Or 675, 626 P2d 342 (1981). Under that rule, the trial court determined the needs of the child and the relative ability of the child's parents to provide an amount of support that would provide for the child at the standard of living that would have been enjoyed but for the dissolution. 290 Or at 684. Likewise, before it was amended in 1989, ORS 107.105(1)(c) provided:

> "In determining the amount of child support, the court shall consider the economic needs of the children and *determine payment by the parents* in proportion to their respective ability to pay." (Emphasis supplied.)

In making this determination, the court was required to consider, among other things, the financial resources of both parents, the standard of living that the child would have enjoyed had the marriage not ended, the cost of day care, and the expenses attributable to the physical, emotional and educational needs of the child.[1]

The adoption of the child support guidelines amended the way in which the amount of child support is to be determined. Under the *Smith* rule and prior law, the trial court's order in this case would have been proper. In the construction of amendatory acts, it is presumed that the amendment does not change the preexisting law beyond what is expressly declared or implied. *Fifth Ave. Corp. v. Washington County*, 282 Or 591, 597, 581 P2d 50 (1978). It is significant that the amendment to ORS 107.105(1)(c) refers expressly only to how the amount of child support is to be determined. The amendment did not change the first sentence of ORS 107.105(1)(c),[2] which is the sentence that grants authority to the trial court to make orders about child support that constitute the "just and proper contribution toward the welfare and support" of the children. The amendment says nothing about the court's authority to make other provisions in the judgment that may indirectly impact the support obligation that is owed, once the amount is initially determined. Specifically, it says nothing about the authority of the court to direct a support obligee to file a satisfaction of

---

[1] The factors to be considered were added to the statute in 1983. *See* Or Laws 1983, ch 728, § 2.

[2] *See* Or Laws 1989, ch 811, § 6.

judgment in the event that transportation costs are incurred to further visitation. The majority adds to the statute in contravention of ORS 174.010 when it writes into the statute a requirement that the court's authority to order a satisfaction of judgment is circumscribed by the provisions of ORS 25.270 to ORS 25.287 and ignores the presumption that the legislature did not intend to change preexisting law except as to the manner in which child support is "determined."

Moreover, the text and context of these provisions do not support the majority's argument. ORS 25.270 provides, in part:

"The Legislative Assembly finds that:

"(1)  The federal Family Support Act of 1988 mandates that the state *must* establish a formula for child support award amounts * * *.

"(2)  It is further mandated that the amount of child support determined by the formula *must* be presumed to be the correct amount unless rebutted by a specific finding on the record that the application of the formula would be unjust or inappropriate in the particular case as determined under criteria established by the state." (Emphasis supplied.)

ORS 25.280 provides, in part:

"[T]he amount of support determined by the formula * * * *shall* be presumed to be the correct amount of the obligation. This shall be a rebuttable presumption and a written finding or a specific finding on the record that the application of the formula would be unjust or inappropriate in a particular case shall be sufficient to rebut the presumption. The following criteria shall be considered in making the finding:

"(1)  Evidence of the other available resources of a parent;

"* * * * *

"(6)  The special hardships of a parent including, but not limited to, any medical circumstances of a parent affecting the parent's ability to pay child support." (Emphasis supplied.)

The majority seizes upon the words "must" and "shall" and on similar provisions in the Family Support Act and in the Senate Report as the basis for its reading of the statute. That argument proves nothing, because the context

of each use of the words is about the determination of the amount of support. None of them expressly declares that a trial court is prohibited from making a decision concerning property division, spousal support or visitation that may indirectly impact the child support obligation, or from requiring a child support obligee to satisfy an obligation because of visitation expenses. In the light of the presumption that the prior law was not changed, the majority's application of the guideline formula to visitation expenses is correct only if the guidelines implicitly outlaw what the trial court did.

The authority of the court to make orders about visitation is dealt with separately and expressly by the legislature. ORS 107.105(1)(b) provides that "[t]he court shall determine the issue of visitation in the best interest of the child, *insuring the non-custodial parent sufficient access to the child to provide for quality parenting time.*" (Emphasis supplied.) Issues such as spousal support and property division receive similar treatment. *See* ORS 107.105(1)(d) and ORS 107.105(1)(f). Inherent in the duty of the court to provide for visitation that is in the best interest of the child is the broad grant of authority to make orders about the extent of the obligor's support obligation so that meaningful visitation can occur. *See Doty and Doty*, 101 Or App 320, 790 P2d 1167 (1990).

Before the guidelines were adopted, courts customarily considered the effect of an award of child support in tandem with the effect of decisions concerning spousal support, visitation rights and property division and not in isolation of each other under these statutes and the authority granted thereby. *See, e.g., Brastad and Brastad*, 38 Or App 585, 590 P2d 794 (1979). The text and context of the statutes about child support and visitation resolve the issue when effect is given to all of them. They expressly authorize the order made by the trial court and it is incongruous to believe that Congress or the Oregon legislature would have implicitly intended to change that practice by the mere adoption of the guidelines.

Finally, the majority relies on our holding in *Bell and Johnson, supra*. There, we held that, before the trial court could make a downward adjustment of the presumptive amount of child support under the guidelines because of

transportation costs incurred by the noncustodial parent, it must first find that the presumptive amount was unjust or inappropriate. The trial court chose to take visitation expenses into account by using them as an offset against the ongoing amount of child support. In choosing that method, it necessarily implicated the guidelines formula. The trial court did not, as in this case, make the reduction conditional on the expenses being incurred, nor did it use a satisfaction of judgment as the vehicle for accomplishing what was otherwise an equitable result. The majority's holding limits the trial court's authority to a consideration of whether the presumed amount of support under the guidelines is rebutted. The problem with such a wooden approach is that it will not always meet the needs of the parties or facilitate judicial administration. The approach contravenes the broad grant of authority by the legislature to the courts to fashion a "just" remedy. This case presents such an example.

The trial court applied the guidelines and awarded child support of $755.73 per month "continuing with a like payment on the first of each and every month thereafter until [husband] is no longer obligated to pay child support." Under the judgment, each monthly child support obligation will become a separate judgment entered as such. Each judgment is subject to execution, contempt of court procedures and satisfaction like any other judgment. The trial court wisely sought to protect the integrity of the judgment and, at the same time, to facilitate visitation. The visitation provision in the judgment provides:

"[Husband] shall provide for the cost of transporting the children to and from Florida for the purpose of summer vacation and he may withhold one month's child support to apply to the cost of travel. Should [husband] exercise summer visitation, [wife] will sign and file a satisfaction of judgment for one month of child support. If [husband] fails to exercise this visitation, the one month child support abatement will not apply."

Under the majority's proposal, it is impossible to calculate the credit as part of the ongoing accrual of the child support judgment, because the entitlement to the credit is conditional and only exists if husband exercises his visitation rights. The trial court's method promotes visitation and fairness, because it enhances the likelihood of meaningful

visitation by giving husband a credit only in those instances in which monies were actually expended for purposes of visitation. In contrast, the majority's ruling deprives the court of such a tool to the detriment of the parties' children. Congress and the Oregon legislature could not have intended a result that would inhibit the ability of trial courts to provide for visitation in the light of an express legislative policy to provide noncustodial parents quality parenting time.

In summary, I can find nothing in the language or the legislative history of the federal law, ORS chapter 25 or ORS chapter 107 that expresses an intention that a trial court must calculate a satisfaction of a child support obligation for visitation expenses as part of the initial determination of the amount of the child support obligation. The authority of the trial court to make an order such as this one, requiring a support obligee to file a satisfaction of judgment, is expressly authorized by statute and must be preserved even if it has an indirect effect on the amount of child support. Otherwise, the competing policies of providing for the support of dependent children and insuring that they have visitation with the noncustodial parent cannot be balanced.[3]

I dissent.

---

[3] If the majority is correct that the guidelines "drive" the decision-making process on other issues, our *de novo* review of child support awards will require a reexamination of all property divisions, spousal support awards and visitation orders even though the parties may not have assigned error to the trial court's ruling on those issues.