This is a post-divorce modification case.
The parties were divorced in April 1992. Pursuant to an agreement incorporated into the divorce judgment, the mother received custody of the parties' then 18-month-old daughter, Meagan, and the father was given "reasonable rights of visitation . . . at such times and places as the parties may agree, provided, however, that until the child reaches six (6) years of age, the husband shall not have unsupervised overnight visitation." The agreement specified that "supervised visitation" was "visitation in conjunction with the paternal grandparents of the minor child or her aunt(s) and uncle(s)."
In August 1993, the father filed a petition to modify the divorce judgment, seeking, among other things, unsupervised visitation with the child one weekend per month. Two months later, the father filed a contempt petition, alleging that the mother was willfully *Page 1230 
and deliberately preventing his visitation with the child. The father also requested, and the trial court subsequently ordered, unsupervised weekend visitation pending trial.
Following an ore tenus proceeding on the merits of the father's petition to modify, the trial court granted the petition and ordered that the father was to have unsupervised visitation one weekend per month, one month during the summer, and one week during the Christmas holidays. The court relieved the father of his obligation to make a child support payment in the summer month during which the father had visitation with the child, and gave the father the right to claim the federal income tax dependency exemption for the child "for the year 1994 and each year thereafter as long as this Order remains in effect."
The mother appeals, claiming that the trial court erred (1) by modifying the visitation provision of the judgment without a showing of a material change in circumstances, (2) by establishing a schedule of holiday visitation that requires the child to travel on Christmas Day, (3) by abating the father's child support payment for the summer month during which he has visitation with the child, and (4) by giving the father the federal tax exemption for the child.
The trial court has broad discretion in deciding on visitation rights of the noncustodial parent. Wallace v.Wallace, 485 So.2d 740 (Ala.Civ.App. 1986). This discretion applies to modification proceedings as well as to the original custody proceeding. Id. "When the issue of visitation is determined after oral proceedings, the trial court's determination of the issue will not be disturbed absent an abuse of discretion or a showing that it is plainly in error.Andrews v. Andrews, 520 So.2d 512 (Ala.Civ.App. 1987)."Dominick v. Dominick, 622 So.2d 402, 403 (Ala.Civ.App. 1993).
The record indicates that at the time of the divorce, the father was not comfortable caring for an 18-month-old infant without assistance, and he had relied on his parents to help him with the child. However, since the divorce, the child's paternal grandfather had died and the paternal grandmother's health had deteriorated. The father remarried. His present wife has a daughter, and they have established a secure family life together. Meagan, who was 18 months old at the time of the divorce, was slightly older than 3 years when the petition to modify was filed.
From the record before us, we cannot hold that the trial court plainly erred by determining that the father had established a material change in circumstances. See Durham v.Heck, 479 So.2d 1292 (Ala.Civ.App. 1985). The record supports the court's determination that a modification of visitation was in the best interest of the child. Id.
The mother claims that the court's establishing a schedule of holiday visitation that requires the child to travel on Christmas Day was not in the best interest of the child. She complains that the court's visitation order compels the child to spend a good part of Christmas Day being driven between her parents' homes, and prevents her from having any meaningful time with either parent on that day.
The court's order provided that the child was to be with the mother until 2:00 p.m. on Christmas Day during even-numbered years and with the father until 2:00 p.m. on Christmas Day in odd-numbered years. The record reveals that the father lives in Dadeville and the mother lives in Mobile, and that the driving time between those two cities is four hours.
In outlining holiday visitation, the trial court obviously took into account each party's expressed desire to spend Christmas Day with the child. No doubt the court also considered what is evident from the record: the parties have a great deal of animosity for each other and have been unable to agree on visitation issues in the past. As this court observed under similar circumstances dealing with a mother's dissatisfaction with spring break visitation,
 "Obviously, in situations where the parents are unwilling or merely fail to cooperate with each other for visitation purposes, a court-established schedule is necessary. In the instant case, the wife's discontentment with this visitation schedule simply *Page 1231 
does not rise to the level of discretionary abuse."
Butts v. Butts, 600 So.2d 1038, 1043 (Ala.Civ.App. 1992).
The mother claims that the trial court's order abating the father's child support payment during the summer month in which he exercises visitation penalizes her and deviates from the child support guidelines of Rule 32, Ala.R.Jud.Admin., without "stating the reasons therefor." Rule 32(A)(ii). We agree.
The Commentary to Rule 32 outlines three "assumptions" that have been "incorporated in the Schedule of Basic Child Support Obligations." One of those assumptions concerns the matter of "Visitation." Under that heading, the Rule 32 Comment states:
 "The Schedule of Basic Child Support Obligations is premised on the assumption that the noncustodial parent will exercise customary visitation rights, including summer visitation. Any abatement of child support because of extraordinary visitation should be based on visitation in excess of customary visitation."
(Emphasis added.) The mother insists that visitation for one month in the summer is not "extraordinary" or "in excess of customary visitation." Again, we agree.
Although the issue of abatement of child support during extended visitation periods does not appear to have been raised in any reported Alabama decision, it has been the subject of litigation and critical comment elsewhere. See, e.g.,Marmaduke v. Marmaduke, 640 N.E.2d 441 (Ind.App. 1994); In reMarriage of Toedter, 473 N.W.2d 233, 235 (Iowa App. 1991);Beals v. Beals, 517 N.W.2d 413 (N.D. 1994); In re Marriage ofBurns, 107 Or. App. 167, 811 P.2d 654 (1991). See generally K. Getman, Changing Formulas for Changing Families: Shared CustodyMust Not Shortchange Children, 10 Family Advocate 47 (Spring 1988).
In some jurisdictions, the child support guidelines specifically allow for abatement of child support during periods of visitation. For example, in Indiana, the guidelines provide for an abatement of "no more than 50% of the non-custodial parent's support obligation during visitation exceeding seven days." Marmaduke v. Marmaduke, 640 N.E.2d at 443.
In other jurisdictions, however, the guidelines have been interpreted to prohibit an abatement of child support during visitation, except in extraordinary circumstances. See, e.g.,In re Marriage of Burns, supra. In Burns, the Oregon court observed:
 " 'The custodial parent's obligation to provide for the child cannot conveniently be segmented on a month to month basis. The parent must provide shelter, clothing, toys, furniture and many other items that last beyond a month, and the cost of which must be amortized over a longer period of time than reflected in a monthly child support obligation. In the instance where the visitations are of a short duration and dispersed over a period of time it would impose a penalty on the child to suspend the support payments during visitation. . . .' We conclude that [the] husband's child support payment should not be suspended during the children's summer visitation with him."
107 Or. App. at 172, 811 P.2d at 657 (quoting Pergament v.Pergament, 28 Or. App. 459, 463, 559 P.2d 942, 943-44 (1977)). The Oregon child support guidelines, like the Alabama child support guidelines, are based on the "Income Shares" model. D. Dodson, A Guide to the Guidelines, 10 Family Advocate 4, 10 (Spring 1988).
One commentator on the guidelines has noted:
 "Certain fixed expenses are unaffected by the noncustodial parent's increased visitation. Total child-related expenditures to age 18 are estimated as follows: 25.1 percent for transportation; 24.1 percent for shelter, household goods, fuel, and utilities; 7.3 percent for clothing; and 5.7 percent for health care (See T. Espenshade, Investing in Children, at 58 (1984)). Thus 62.2 percent of the total costs to age 18 are primarily fixed. Regardless of where the child sleeps on a given night, the custodial parent continues to pay rent and utilities on a two-bedroom apartment and still makes health insurance, auto loan, and orthodontist payments. A decrease in the *Page 1232 
amount of child support paid during that time will hinder the custodial parent's ability to meet these fixed costs."
K. Getman, Changing Formulas for Changing Families: SharedCustody Must Not Shortchange Children, 10 Family Advocate at 48-49.
Based on that portion of the Rule 32 Comment quoted above and on the foregoing authorities, we hold that our child support guidelines do not authorize abatement of child support during periods of visitation that are not "substantially in excess of those customarily approved or ordered by the court." Rule 32(A)(1)(a). If the trial court orders an abatement of support during a standard visitation period, such as the one-month summer visitation period relevant here, then the court has deviated from the guidelines and must state its reasons for the deviation.
The mother contends that the trial court further deviated from the child support guidelines by giving the father the right to claim the federal income tax dependency exemption for the child. The evidence was undisputed that the father has been providing more than half of the support for the child since the divorce. The mother, who is self-employed in a new business venture, testified that she did not have enough income to benefit from the tax exemption. She testified that, although she objected to the father's having the tax exemption "on a permanent basis," she had no objection to his claiming the exemption for the present.
Although it is clear to this court why the trial court granted the father the income tax exemption, the Comment to Rule 32, states, under the heading "Tax Exemptions":
 "The Schedule of Basic Child Support Obligations assumes that the custodial parent will take the federal and state income tax exemptions for the children in his or her custody."
(Emphasis added.)
We have held that the allocation of the dependency exemption is a matter of discretion for the trial court. Grigsby v.Grigsby, 620 So.2d 35 (Ala.Civ.App. 1993); Knight v. Knight,579 So.2d 679 (Ala.Civ.App. 1991); Gamble v. Gamble,562 So.2d 1343 (Ala.Civ.App. 1990). As in all discretionary matters, the judgment of the trial court will not be reversed on appeal absent a showing of abuse. Hamby v. Hamby,575 So.2d 580 (Ala.Civ.App. 1991). We find no abuse here.
However, "inherent in complying with Rule 32, Ala.R.Jud.Admin., is complying with Rule 32(A)(ii), if the facts support such a determination, i.e., that application of the guidelines, stating the criteria, would be manifestly unjust or inequitable." Martin v. Martin, 637 So.2d 901, 903
(Ala.Civ.App. 1994).
We therefore remand this cause with directions for the trial court to redetermine the issue of a child support abatement during summer visitation. If the court allows an abatement, we direct it to make "[a] determination . . ., based upon evidence presented in court and stating the reasons therefor, that application of the guidelines would be manifestly unjust or inequitable." Rule 32(A)(ii). We also direct the trial court to make a similar determination with respect to the grant of the tax exemption to the father.
We affirm the judgment of the trial court on the matters relating to visitation. However, we reverse its judgment with respect to the issues of child support abatement and the federal tax exemption and direct the court to redetermine those issues in compliance with the principles set out herein.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH DIRECTIONS.
ROBERTSON, P.J., and THIGPEN, YATES and MONROE, JJ., concur. *Page 1233