RICHARD L. HOLMES, Retired Appellate Judge.
This is a divorce case.
The parties were married in March 1988. Three children were born of the marriage. The parties separated in August 1995, when the wife and the minor children went to Montana for a vacation with the wife’s family. In September 1995 the wife filed a complaint for divorce, requesting custody of the three minor children.
The husband filed an answer and a counterclaim for divorce, requesting custody of the three minor children. •
After a hearing the trial court issued a divorce decree, awarding custody of the three minor children to the wife, with visitation rights vested in the husband. The trial court ordered the husband to pay $967 per month as child support. The decree stated that if the husband exercised his six weeks of summer visitation, the wife was to pay the husband “a sum equal to one month’s child support.”
The trial court ordered the marital residence sold (by private sale, but if not sold within 180 days of the divorce decree, by public sale) and ordered that the net proceeds, after deducting the costs of the sale, be divided equally between the parties. The trial court also awarded each party his or her own savings accounts, checking accounts, credit card accounts, IRA accounts, retirement accounts, and/or stocks and bonds in his or her own name.
The wife filed a motion to alter, amend, or vacate the judgment and a motion for a new trial. Thereafter, the trial court issued an amended order, which primarily addressed the division of household furniture, accessories, etc.
The husband filed a motion, alleging that the trial court’s amended order effectively awarded to the wife all of the parties’ household furniture, accessories, etc. The wife filed a response to the husband’s motion and *437 a countermotion. Thereafter, the trial court issued a second amended order, which addressed the division of household furniture, accessories, etc.
The wife appeals.
On appeal the wife contends that the trial court abused its discretion in failing to award alimony to her, in dividing the marital property between the parties, and in determining the method of sale of the marital residence. The wife also contends that the trial court abused its discretion regarding the child support obligations imposed upon the parties.
It is well settled that the issues of alimony and the division of real and personal property in a divorce ease are issues which are committed to the sound discretion of the trial court. See 22 Ala. Digest, Divorce, Key Nos. 252.1, and 286(5). The trial court’s judgment will not be disturbed on appeal unless it is shown that the trial court plainly and palpably abused its discretion or unless it is shown that the trial court’s determination is clearly and obviously wrong. Peck v. Peck, 581 So.2d 1119 (Ala.Civ.App.1991).
The property division does not have to be equal, only equitable, under all the circumstances of the particular case. Brown v. Brown, 602 So.2d 429 (Ala.Civ.App.1992); See 22 Ala. Digest, Divorce, Key No. 252.2. In McCluskey v. McCluskey, 495 So.2d 66 (Ala.Civ.App.1986), this court outlined the factors that the trial court should consider when dividing the property in a divorce case. These factors include the length of the marriage; the parties’ ages, sex, health, and station in life; the future prospects of the parties; and the conduct of the parties regarding the breakdown of the marriage. McCluskey, 495 So.2d 66.
Initially, we would note that the division of the household furniture, accessories, etc., appears to be an equitable division of the personal property accumulated during the marriage.
Our review of the record reveals the following pertinent facts: The husband is a graduate of the United States Military Academy and also has a civil engineering degree from the University of Aabama at Birmingham.
The wife has a nursing degree and was a labor and delivery room nurse in the United States Army at the time of the parties’ marriage in 1988. The wife worked part-time as a nurse, most recently at Brookwood Hospital. In July 1994, after the birth of the parties’ youngest child, the parties agreed that the wife would remain home with the three minor children.
Since the parties’ separation, the husband has changed jobs. We would note that the husband reduced his income approximately $6,000 per year when he changed jobs. The husband currently works for the Department of Defense. The.husband testified as to the reasons for the job change — he “was offered a permanent position doing the same thing [he] was doing for Jones [Technology] in the same place, and the second reason is because that job offered the health insurance that was available in Kalispell [Montana, where the minor children reside with the wife].”
Prior to the parties’ separation in August 1995, both the husband and the wife were active in the reserves. Since the separation, the wife changed her active reserve duty, for which she received a monthly income and additional income for attending summer camp, to individual ready reserve (IRR) status. The wife received approximately $6,000 per year in income when she was on active reserve duty. The wife admitted that while on IRR status, she receives no compensation unless she performs some duty.
The husband also had to change his reserve job from a pilot to an engineer because, he said, his job with the Department of Defense required him to have a reserve job with the parallel military organization. The husband testified that while he is no longer eligible for flight pay, he earns approximately $300 per month from the reserves, plus compensation for the two-week summer camp.
Prior to the parties’ separation, the husband handled the family’s finances. Every month the husband gave the wife $900 to use for food, spending money, and miscellaneous gifts. The husband paid the mortgage, utili *438 ties, insurance, credit cards, and other family expenses. Each party was responsible for paying the charges on his or her own personal credit cards.
As one can see in the following testimony from the wife, she wants to enjoy the same lifestyle post-divorce that she enjoyed before the separation:
“Q. Are you asking the court to award you alimony and give you the same consideration that you were getting for support when you were living here in Alabama and not working and taking care of three small children on a full-time basis?
“A. I don’t understand your question. I’m sorry.
“Q. Okay. You were living in Birmingham, Alabama, before the move, the vacation in August of ’95, correct?
“A. Yes.
“Q. And you were not working as far as full-time employment?
“A. Yes.
“Q. You were not working as a nurse?
“A. No.
“Q. You were staying home taking care of the children?
“A. Yes.
“Q. And that was by agreement with your husband?
“A. Yes.
“Q. And pursuant to that agreement, he gave you money to spend, correct?
“A. Yes.
“Q. He gave you grocery money?
“A. Yes.
“Q. And he paid the utility bills and the mortgage payment, didn’t he?
“A. Yes.
“Q. All right. So what you’re asking is for him to try to keep the lifestyle as far as accommodations the same, as near as possible, following the divorce as within the power of the court to allot?
“A. Yes.”
The wife testified that she needs approximately $3,257 per month (including a $1,000 per month mortgage) to meet her total proposed expenses in Montana. We would note the following testimony from the wife regarding employment in Montana:
“Q. Did you make any efforts to locate employment as a nurse after going to Montana in August of ’95?
“A. Yes.
“Q. Have any of those efforts been successful?
“A. No.
“Q. Tell the court what, if any, occupation you are doing at this time in order to receive monies.
“A. I’m keeping children, babysitting.
“Q. And what do you earn?
“A. Twenty dollars a day.”
We would note that the wife testified that she makes less than $300 per month babysitting. As previously noted, the wife changed from active reserve status to IRR status and gave up approximately $6,000 per year in income.
The wife testified to the following on cross-examination:
“Q. Well, you can be employed outside the home, is that correct?
“A. Yes.
“Q. You’re not disabled, are you?
“A. No.
“Q. You’re not mentally disabled, are you?
“A. No.
“Q. You’re college educated, aren’t you?
“A. Yes.
“Q. You have work experience, don’t you?
“A. Yes.
“Q. You chose to go to Montana, didn’t you?
“A. It was a joint decision.
“Q. To stay?
“A. Yes.
“Q. He chose for you to stay in Montana?
“A. He offered that as an option for me to do, and I accepted.
“Q. When did he offer that as an option?
*439 “A. The second week of my vacation. It was his idea, Mr. Arnold.
“Q. Did he say, T want you to stay in Montana’?
“A. He said, ‘If you want to stay in Montana and wait, you can.’ And I did.
“Q. To wait for what?
“A. For him to move up there.
“Q. You’re still up there?
“A. Yes. And he hasn’t moved up there.
“Q. You have the choice to move back here, don’t you?
“A. The ultimate was to move to Montana.
“Q. That wasn’t my question. You have the choice to move back here?
“A. Yes.
“Q. And you haven’t moved back here, is that right?
“A. Yes.
“Q. Back here you have at least a part-time job available to you?
“A. Yes.
“Q. Could you not go to Brookwood or St. Vincent’s or Carraway or any of the other hospitals in town?
“A. I don’t know.
“Q. Did you even try?
“A. No.
“Q. Have you put in any application- to work anywhere in Montana?
“A. No.
“Q. No. Three thousand two hundred and fifty-seven dollars a month and you want relief. What relief have you applied for? Have you applied for welfare?
“A. No.
“Q. You haven’t applied for welfare and you haven’t applied for a job anywhere up there, is that right?
“A. No.
“Q. You have applied for him to give you money, haven’t you?
“A. Yes.”
We would note that the wife testified that her mother and her stepfather, who is a plastic surgeon, live in Kalispell, Montana. The wife further testified that her brother and his family and her sisters also live in Montana. On redirect the wife testified as follows:
“Q. And Mr. Arnold asked you about applications in Montana. You have made efforts to locate jobs, have you not?
“A. Yes.”
However, the wife does not elaborate as to the types of jobs she has attempted to locate since the separation.
We have reviewed the record and find the trial court’s judgment was not plainly or palpably wrong or unjust. Consequently, the trial court did not abuse its discretion in failing to award alimony to the wife, in dividing the marital property between the parties, and in determining the method of sale of the marital residence.
The wife also contends that child support obligations imposed upon the parties is a deviation from the child support guidelines of Rule 32, Ala. R. Jud. Admin., and that the trial court failed to state the reason for the deviation, as required by Rule 32.
The trial court’s order stated the following, in pertinent part:
“C. That the [husband] shall pay to the [wife] the sum of Nine Hundred Sixty Seven Dollars ($967.00) per month for the support and maintenance of the minor children of the parties. The monthly child support payment is baséd on computation pursuant to the Alabama Rules of Judicial Administration, Rule 32, as evidenced by the CS-42 form attached hereto and incorporated herein and made a part hereof.
“The first such payment shall be due and payable on or before the 15th day of May 1996, and subsequent payments shall be made on or before the 15th day of each month thereafter until such time as the said minor children reach the age of nineteen (19), marry, or become self-supporting.
“If, and in the event, the [husband] exercises his [six weeks of] summer visitation with the minor children, the [wife] shall pay over to the [husband] a sum equal to one month’s child support hereunder.”
*440 In Flanagan v. Flanagan, 656 So.2d 1228, 1232 (Ala.Civ.App.1995), this court stated the following:
“Based on that portion of the Rule 32 Comments quoted above and on the foregoing authorities, we hold that our child support guidelines do not authorize abatement of child support during periods of visitation that are not ‘substantially in excess of those customarily approved or ordered by the court.’ Rule 32(A)(1)(a). If the trial court orders an abatement of support during a standard visitation period, such as the one-month summer visitation period relevant here, then the court has deviated from the guidelines and must state its reasons for the deviation.”
When the trial court ordered the wife to pay “to the husband a sum equal to one month’s child support,” the trial court was deviating from the child support guidelines. Consequently, we reverse that portion of the trial court’s order and remand it for a reconsideration of this issue. If, on remand, the trial court deviates from the child support guidelines, it should state the reasons for such a deviation, as required by Rule 32, Ala. R. Jud. Admin.
The wife also contends that the trial court should have used the husband’s earning ability, rather than his actual post-separation earnings, when preparing the CS-42 form. However, we would note that the trial court used both parties’ post-separation earnings when preparing the CS-42 form. Consequently, we find no abuse of discretion on the part of the trial court.
In light of the foregoing, we affirm the trial court’s judgment as it relates to the issues of alimony and property division. However, we reverse that portion of the trial court’s judgment relating to the deviation from the child support guidelines and remand for proceedings consistent with this opinion.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of Ala.Code 1975, § 12-18-10(e).
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
All the Judges concur.