721 So.2d 699 (1998)
K.T.W.P.
v.
D.R.W.
2970312.
Court of Civil Appeals of Alabama.
June 12, 1998.
Opinion on Return to Remand August 21, 1998.
*701 Patricia W. Cobb Stewart, Scottsboro, for appellant.
Becky Meyer, Decatur, for appellee.
CRAWLEY, Judge.
The parties, K.T.W.P. (the "mother") and D.R.W. (the "father"), were married in November 1984. They had one child, K.W., a daughter, who was born in 1988. In September 1992, the parties separated; the husband sued for a divorce in 1993. The parties agreed that they would have joint custody, with primary physical custody in the mother, and that the father would have standard visitation. The trial court divorced the parties and incorporated their agreement into its judgment.
In September 1996, the father filed a petition asking the court to find the mother in contempt and to modify the custody provisions. He alleged that the wife had failed to comply with the divorce judgment by denying him visitation with the child and by failing to provide medical insurance. He requested that he be granted primary physical custody of the child and be allowed to claim the income tax dependency exemption for the child. The wife answered the father's petition, denying the contempt allegations, and counterclaimed, requesting that the father be held in contempt for a failure to pay child support and his portion of the medical expenses not covered by insurance. She also requested termination of the father's visitation rights.
After a two-day trial, the trial court denied each party's petition for modification, held both parties in contempt, ordered that the father provide insurance for the child, ordered that the mother communicate with the father concerning visitation and the like, granted the father the right to claim the income tax dependency exemption for the child, and ordered that the child's residence not be moved outside the state or more than 50 miles from the residence of the father. The mother appeals.
In December 1994, the mother remarried. She and her new husband (the "stepfather") lived with his parents for approximately six months, during which time the daughter slept in the same room as her mother and stepfather. The mother and stepfather have since moved to their own home in Madison County, outside Huntsville.
The mother testified that she disapproves of the father's homosexual lifestyle and that she does not want to have anything to do with him that would give the impression that she condones his lifestyle. She admitted that she did not communicate with the father concerning visitation, but said that she instead left any required communication with the father up to the stepfather. She admitted at least one instance where she withheld visitation from the father.
The mother and the stepfather admitted that, while the child slept in the same room with them, they had sexual relations. According to the stepfather, any sexual activity occurred while the child was asleep and the "bedroom was big enough where she wouldn't have seen us anyway." When questioned further about the possibility of the child witnessing any sexual activity, he stated "Well, that's part of living with a man, sleeping with a woman." The mother also admitted that she and the stepfather probably had sexual relations while the child was in the room, but "[n]ot while she was watching." She also stated, "I would rather her see my husband and myself in bed together than [the father] and [his sexual partner]. I would rather her see neither."
The father lives in Decatur with his sexual partner, T.K., a man. His sexual preference was a factor contributing to the parties' divorce. He and T.K. reside in a two-bedroom, one-bath home. He and T.K. testified that, when the child visits, the child sleeps in her *702 own room. They also both testified that they did not sleep in the same room when the child was visiting. According to the father, T.K. sleeps in T.K.'s own bedroom and the father sleeps on the couch when the child visits. He also testified that the child's privacy is safeguarded and that he, and not T.K., cares for the child's personal needs, like supervising bathing, while she is visiting.
The mother first argues that the trial court erred when it held her in contempt for denying the father visitation. The trial court held the mother in contempt for 8 separate violations of the father's visitation rights and sentenced her to 40 days in jail (5 days for each of the 8 violations); however, the trial court suspended the jail sentence and placed the mother on 24 months' probation. The mother argues that the evidence does not support a finding that she "willfully or intentionally interfered with the visitation schedule." She also argues that the evidence did not support the finding that there were eight specific and identifiable instances of contempt.
The mother is correct in arguing that to support a finding of criminal contempt, the contemptuous actions must be specific and identifiable. Lowe v. Lowe, 561 So.2d 240 (Ala.Civ.App.1990). However, we need not determine whether the evidence before the trial court supports its finding of eight separate instances of contempt because the trial court's own order states that "the dates [of the missed visitation] are not specific enough to justify a finding of contempt." Therefore, the trial court's own findings do not justify its conclusion that the mother was in contempt. On remand, the trial court should determine and specify the dates on which the mother denied visitation or else vacate its judgment of contempt.
The mother also argues that the trial court erred by not altering or restricting the father's visitation rights. Her argument that the trial court should have somehow limited or restricted the father's visitation rights is based squarely on her disapproval of the father's homosexuality. Although she correctly states that a trial court can restrict heterosexual parents from having overnight guests of the opposite sex during visitation periods, see e.g., Thornburg v. Thornburg, 628 So.2d 885 (Ala.Civ.App.1993), her conclusion that a trial court should restrict homosexual parents from having overnight guests of the same sex does not logically follow.
A trial court has broad discretion over the determination of visitation rights. Andrews v. Andrews, 520 So.2d 512, 513 (Ala.Civ.App.1987). In making its determination, a trial court must, of necessity, "examin[e]... the facts and circumstances of the individual situation." Andrews, 520 So.2d at 513. "There is a strong presumption that the trial [court] correctly exercised [its] discretionary authority as to visitation and correctly reached a conclusion advancing the best interest of the child[]." Ex parte D.W.W., 717 So.2d 793 (Ala.1998). In light of the ore tenus presumption, which is based on the trial court's ability to observe the witnesses before it and assess their credibility, a trial court's award of visitation rights cannot be disturbed on appeal unless it is so unsupported by the evidence as to be plainly and palpably wrong. Id. This court cannot substitute its judgment for that of the trial court. Id.
The trial court could have restricted the father's visitation in this case. If it had done so, we very likely would have affirmed such a restriction. See Ex parte D.W.W., 717 So.2d at 794-95 (affirming the trial court's judgment in which visitation was restricted so as to prevent contact with the mother's lesbian partner). However, the trial court, after hearing all the testimony and observing all the witnesses, determined that the only restriction necessary for the welfare of this child was the one prohibiting both the mother and the father from engaging in sexual activities in the child's presence.
We do not believe that the supreme court's opinion in Ex parte D.W.W. compels a reversal in this case. Although the supreme court affirmed a visitation restriction involving a mother and her lesbian partner, the case does not stand for the proposition that visitation restrictions are required in every case involving a homosexual parent. The court's affirmance was based upon the "foundation *703 of credible evidence indicating that unrestricted visitation with [the mother] would not be in the best interests of the children." Ex parte D.W.W., 717 So.2d at 795. Testimony in Ex parte D.W.W. established that the children began using inappropriate and vulgar language and began lying and that the mother's partner had used inappropriate disciplinary methods. Ex parte D.W.W., 717 So.2d at 796. However, in this case, there is a complete absence of any evidence that the child's best interests would be promoted by restricting or terminating visitation with her father.
The testimony at trial supports the trial court's apparent conclusion that the father acts responsibly toward his child by sleeping apart from his partner while the child is in their home. The trial court did restrict visitation by prohibiting either parent from engaging in sexual activities in the presence of the child. That restriction will sufficiently protect the child. We will not reverse the trial court's judgment because of its failure to restrict the father's visitation to suit the mother's wishes. See Ex parte D.W.W., 717 So.2d at 796; Andrews, 520 So.2d at 513.
The mother's next argument is that the trial court erred in awarding the father the right to claim the income tax dependency exemption for the child. The Comment to Rule 32, Ala. R. Jud. P., states that it is assumed that the custodial parent will take the income tax exemption for the child or children in his or her custody. In Flanagan v. Flanagan, 656 So.2d 1228, 1232 (Ala.Civ. App.1995), this court held that, although the allocation of the dependency exemption is vested in the sound discretion of the trial court, the trial court must, if deviating from the "guidelines" by awarding the exemption to the noncustodial parent, comply with Rule 32(A)(ii) by stating the reasons for such an award. The trial court apparently granted the exemption to the father, provided he is current in child support payments, because he will be providing health insurance for the child and because the mother is unemployed. Despite our understanding of the trial court's reason for its award of the exemption to the father, we must remand this cause with instructions for the trial court to give a statement of reasons for its award as required by Rule 32(A)(ii). Flanagan, 656 So.2d at 1232.
The mother's final argument is that the trial court erred by requiring that the child's residence not be moved outside the state or more than 50 miles from the father's residence. As this court has previously determined, the use of such a provision, commonly referred to as a territorial restriction, is not in and of itself reversible error. Cohn v. Cohn, 658 So.2d 479, 481-82 (Ala.Civ.App. 1994); McDaniel v. McDaniel, 621 So.2d 1328, 1330 (Ala.Civ.App.1993). As those cases and others have pointed out, a territorial restriction "may be upheld when [it] promotes or protects the best interest of the child[] involved." Cohn, 658 So.2d at 481-82.
The mother does not attack the territorial restriction's effect on the best interest of the child. Instead, she argues that her present residence, which was her residence at the time of trial, is located more than 50 miles from that of the father. If this is true, then she was in violation of the trial court's judgment the day it was signed. The record does not indicate the exact distance between the mother's residence, near Huntsville, and the father's residence, in Decatur. The father did testify it takes approximately an hour to get to the mother's house from his. In light of the fact that the record does not indicate the exact distance between the parties' residences and in light of the mother's statement that her residence is more than 50 miles from the father's, on remand the trial court is to determine the distance between the parties' residences and, if necessary, revise the territorial restriction so as to reflect an appropriate distance.
The trial court should file a return with this court within 42 days of the date of this opinion.
The father has requested an attorney fee on appeal; that request is denied.
AFFIRMED IN PART AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and YATES, MONROE, and THOMPSON, JJ., concur in the result.

*704 On Return from Remand

CRAWLEY, Judge.
The trial court, in compliance with our instructions, has filed its return with this court. As the trial court points out, this Court did misread its judgment relating to the issue of contempt. The trial court explains in its order on remand that the phrase, "[w]hile the dates are not certain enough to justify a finding of contempt," refers not to the dates on which the mother or the stepfather willfully denied the father visitation with the child, but instead refers to the dates on which the mother or the stepfather prevented the father from having reasonable telephone visitation with the child. We appreciate the trial court's clarification of its order on the contempt issue; in compliance with our instructions, the trial court set out six specific occasions on which it found the mother or the stepfather had willfully denied the father visitation. Those occasions are: February 17, 1995; Christmas visitation 1995; Christmas visitation 1996; spring holidays 1997; May 2, 1997; and May 16, 1997. The trial court also stated that it held the mother in contempt for "two other occasions ... when the father went to the mother's home to pick up the child and found no one present." Because the trial court could list only six specific occasions, we must reverse that portion of the trial court's judgment holding the mother in contempt for eight violations of the divorce judgment. See Lowe v. Lowe, 561 So.2d 240 (Ala.Civ.App.1990). However, because the evidence in the record supports six specific occasions on which the mother willfully denied the father visitation, the trial court is instructed to modify its judgment of contempt to hold the mother in contempt for six violations of the visitation provisions of the parties' divorce judgment and to adjust the sentence of 40 days to 30 days.
The trial court also explained its reasons for awarding the income tax dependency exemption to the father and not to the mother, despite the Comment to Rule 32, Ala. R. Jud. Admin., which incorporates into the child support guidelines the assumption that the custodial parent will take the exemption. The trial court reasoned that the exemption should be awarded to the father because the mother, who does not work outside the home, has no income; because the father is required to provide health insurance for the minor child; and because the father incurs long distance telephone charges to maintain contact with the child. The allocation of the income tax dependency exemption rests in the sound discretion of the trial court, so long as the court states the reason for any deviation from the "guidelines." Flanagan v. Flanagan, 656 So.2d 1228, 1232 (Ala.Civ.App.1995). The trial court's allocation of the exemption to the father is affirmed.
This court's final instruction to the trial court on remand required the trial court to determine the distance between the parties' residences so that this court could properly review the 50-mile territorial restriction of the original divorce judgment. The trial court ordered the parties to submit evidence concerning the distance between their residences and, after considering the evidence, determined that the proper course would be to increase the restriction to 60 miles. We agree that such a revision is appropriate in light of the parties' disagreement concerning the distance between their homes. The revision of the restriction to 60 miles effectively renders meritless the mother's argument that she violated the territorial restriction the day the divorce judgment was signed. She makes no argument that the restriction is not in the best interest of the child. See Cohn v. Cohn, 658 So.2d 479, 481-82 (Ala.Civ. App.1994) (stating that a territorial restriction "may be upheld when [it] promotes or protects the best interests of the child[] involved"). Therefore, that part of the order revising the territorial restriction to 60 miles is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, MONROE, and THOMPSON, JJ., concur.
ROBERTSON, P.J., concurs in the result.