THOMPSON, Presiding Judge.
Lauren Bosarge ("the mother") and Richard Gerald Bosarge II ("the father") were divorced by a December 16, 2015, judgment of the Mobile Circuit Court ("the trial court"). On March 24, 2016, the father filed a petition seeking to modify the divorce judgment. The mother later counterclaimed, also seeking to modify the divorce judgment and seeking to have the father held in contempt. The trial court conducted an ore tenus hearing.
On November 6, 2017, the trial court entered an order addressing all of the pending issues except the mother's contempt claim. On December 4, 2017, the mother filed a purported postjudgment motion in which she raised legal issues and arguments pertaining to the sufficiency of the evidence supporting the trial court's November 6, 2017, order. On December 13, 2017, the trial court entered a judgment that modified two provisions of its November 6, 2017, order and determined that the father was in contempt. That December 13, 2017, judgment constituted the final judgment in this action because it disposed of the last of the pending claims between the parties. Stockton v. CKPD Dev. Co., 936 So.2d 1065, 1069-70 (Ala. Civ. App. 2005).
In its judgment, the trial court, in relevant part, awarded the father supervised visitation with the child, and it specified that, if no problems arose with that supervised visitation after four months, the father would be allowed a standardized schedule of weekend and holiday visitation. The trial court also reduced the father's monthly child-support obligation "retroactive to March 2016," and it awarded the mother a child-support arrearage of $5,502.[1]
*870 The mother first argues that the trial court did not have the authority to modify the father's child-support obligation retroactively to the date the father had filed his petition for a modification. The mother points out that past-due installments of child support become enforceable money judgments. See, e.g., State ex rel. Brown v. Handley, 628 So.2d 726, 727 (Ala. Civ. App. 1993). However, those past-due installments become final judgments only when they mature before the filing of a petition to modify the child-support obligation. Ex parte State ex rel. Lamon, 702 So.2d 449, 450-51 (Ala. 1997) ; see also State ex rel. Pritchett v. Pritchett, 771 So.2d 1048, 1051 (Ala. Civ. App. 2000) ; Hartley v. Hartley, 42 So.3d 743, 745 (Ala. Civ. App. 2009) ("[C]hild-support payments that mature or become due before the filing of a petition to modify are not modifiable."). Alabama law provides that a modification of child support may be effective as of the date of the filing of a modification petition. Rule 32(A)(3), Ala. R. Jud. Admin. ("The provisions of any judgment respecting child support shall be modified only as to installments accruing after the filing of the petition for modification."). This court has explained that applying a child-support modification retroactively is a matter within the trial court's discretion:
"Whether to make a parent's child-support obligation retroactive to the date the petition to modify was filed is a decision committed to the sound discretion of the trial court. Volovecky v. Hoffman, 903 So.2d 844, 850 (Ala. Civ. App. 2004).
" 'The trial court may exercise its discretion in setting the effective date of a modification, but it is not bound to modify as of the date of the filing of the petition. Clutts v. Clutts, 54 Ala. App. 43, 304 So.2d 599 (1974) ; see also, Murphy v. Murphy, 491 So.2d 978 (Ala. Civ. App. 1986). This matter is within the sound discretion of the trial judge, whose decision will not be disturbed unless it was so unsupported by the evidence as to be palpably wrong, manifestly unjust, or plainly erroneous. Culverhouse v. Culverhouse, 389 So.2d 937 (Ala. Civ. App. 1980).'
" Rogers v. Sims, 671 So.2d 714, 716-17 (Ala. Civ. App. 1995)."
Walker v. Lanier, 221 So.3d 470, 472 (Ala. Civ. App. 2016).
In Williams v. Braddy, 689 So.2d 154, 157 (Ala. Civ. App. 1996), this court determined that a trial court had erred in failing to properly apply the Rule 32 child-support guidelines, and it remanded the cause for a redetermination of the amount of child support. However, this court affirmed the retroactive application of the reduction in the father's child-support obligation to the date of the filing of the father's petition. This court held that if it changed the amount of child support on remand, the trial court should recalculate the father's child-support arrearage as well. 689 So.2d at 157.
The mother in the current case argues only that the trial court lacked the authority to retroactively modify the father's child-support obligation. As already explained, Rule 32(A)(3) and Alabama caselaw do not support that argument. Walker v. Lanier, supra ; Williams v. Braddy, supra. The mother does not argue that the trial court abused its discretion in retroactively modifying the father's child-support obligation; in other words, she does not argue that the evidence did not support the amount of the child-support obligation or that the facts do not support a retroactive application of the new child-support amount. Arguments not asserted in an appellant's brief are deemed waived. See Boshell v. Keith, 418 So.2d 89, 92 (Ala. 1982)
*871 ("When an appellant fails to argue an issue in its brief, that issue is waived.").
The mother next argues that the trial court erred in modifying the visitation schedule for the father. The mother contends that the father did not demonstrate a material change in circumstances sufficient to warrant an award of visitation with the child. The record indicates that the father did not appear at the divorce hearing and that, therefore, a default judgment of divorce was entered. The father testified at the hearing in this matter that he had terminated his former counsel's representation during the pendency of the divorce action and that that attorney had failed to inform him of the scheduled divorce hearing.
The divorce judgment awarded the father supervised visitation at a place known as the "Family Exchange Center." The father had last visited with the child, who was three years old at the time of the modification hearing, in June 2016. The father testified that he could not afford to pay the fees charged by the Family Exchange Center for his supervised visitation. We note that questioning by the trial court indicated that the Family Exchange Center offered a sliding-scale payment schedule based on a parent's income if that parent attended a parenting class through the Family Exchange Center. The father had not participated in that class. The record indicates that the father is not employed and is applying for Social Security disability benefits; the trial court questioned why the father had not attended the parenting class given his lack of employment.
The mother testified that visitation should be supervised because of the father's use of prescription pain medication and because his behavior made the mother question her own safety. The mother testified that, shortly before the default judgment was entered in the divorce action, the father had telephoned her a number of times and had used threatening language; she submitted into evidence audio recordings of those conversations. The recordings of the conversations between the father and the mother during the period before the divorce action indicate that the father frequently used foul language and made occasional vague threats such as saying he was going to call his lawyer and that he would "see her in court," or that "we are going to have a m*****f****** problem." The father swore constantly throughout those conversations and often belittled the mother. In addition, the mother presented evidence about an incident in which the father's new wife warned the mother that the father had threatened to kill the mother and her family.
The father presented evidence indicating that he suffered an on-the-job injury in 2012 and that, thereafter, he was prescribed two different pain medications. The father testified that that medication had changed and his dosage had decreased and that, at the time of the modification hearing, he was taking 15 milligrams of Oxycodone 3 times each day. The father stated that his medication did not prevent him from taking care of his stepchildren, and he testified that he could care for the child during visitation.
The evidence indicates that the mother and the father do not "get along," but there is nothing indicating that visiting the father would not be in the child's best interests.
"The legislature of this state has expressed the view that '[i]t is the policy of this state to assure that minor children have frequent and continuing contact with parents who have shown the ability to act in the best interest of their children,' as well as 'to encourage parents to *872 share in the rights and responsibilities of rearing their children after the parents have separated or dissolved their marriage.' Ala. Code 1975, § 30-3-150. Although not directly applicable to modification judgments, see Ala. Code 1975, § 30-3-157, that statute is consistent with the common-law principle that a noncustodial parent should generally be afforded 'reasonable rights of visitation' with his or her children, Naylor v. Oden, 415 So.2d 1118, 1120 (Ala. Civ. App. 1982)."
S.M.M. v. J.D.K., 208 So.3d 1118, 1122 (Ala. Civ. App. 2015).
The father testified that he had not appeared at the hearing in the divorce action because he had recently terminated the employment of his attorney and did not know the date of the scheduled hearing. The father filed his motion to modify approximately three months after the divorce judgment was entered. The father presented evidence indicating that he had reduced the medications he had been taking for his pain management. The mother insists that that evidence, together with the father's desire to visit the child, does not amount to a material change in circumstances warranting a modification of visitation. The mother also contends that the father's threatening behavior indicates that an increase in visitation is not appropriate. We do not condone the language the father used in his conversations with the mother, the tone he used in communicating with her, or the occasional or implied threats in some of those conversations. However, it is clear that those conversations occurred before the divorce judgment was entered. The mother did not present evidence indicating that those types of communications continued after the entry of the divorce judgment.
Further, those conversations, as well as the mother's testimony at the modification hearing, support a conclusion that the mother opposes the father visiting with the child. The trial court could have interpreted the mother's conduct in restricting the father's contact with the child and her insistence that he receive only minimal visitation as an effort to interfere with the father's relationship with the child.
" ' "The trial court is in the ... position of discerning the demeanor and other like intangibles which do not transfer so readily in a transcript.' Shepherd v. Shepherd, 531 So.2d 668, 671 (Ala. Civ. App. 1988). Stated another way, "the deference given to the trial court by the ore tenus rule is, in part, due to the trial court's unique position to see and/or hear something that may not be apparent on the face of the written record." Willing v. Willing, 655 So.2d 1064, 1068 (Ala. Civ. App. 1995) [ (Thigpen, J., concurring in part and dissenting in part) ].See Dobbins v. Dobbins, 602 So.2d 900, 901 (Ala. Civ. App. 1992) ("The reason for the ore tenus rule is [well established], i.e., that the trial court had the opportunity to observe the witnesses as they testified, to judge their credibility and demeanor, and to observe what this court cannot perceive from a written record.").' "
Fell v. Fell, 869 So.2d 486, 496 (Ala. Civ. App. 2003) (quoting Ex parte Fann, 810 So.2d 631, 638 (Ala. 2001) ).
Given the evidence in the record, we cannot say that the mother has demonstrated that the modification of visitation was not supported by the record or that the award of visitation with the father would not serve the child's best interests. Flanagan v. Flanagan, 656 So.2d 1228, 1230 (Ala. Civ. App. 1995). See also Jackson v. Jackson, 520 So.2d 530, 531 (Ala. Civ. App. 1988) ("[T]he primary consideration in establishing visitation rights for the noncustodial parent is always what is *873 in the best interest and welfare of the child.").
The mother last argues that the trial court erred in ordering her to have the child vaccinated. The mother acknowledges that, in Alabama, children who attend schools must be immunized. See § 16-30-1, Ala. Code 1975 ("The State Health Officer is authorized, subject to the approval of the State Board of Health, to designate diseases against which children must be immunized or for which they must be tested prior to, or, in certain instances after entry into the schools of Alabama."). She states, however, that she may validly claim an exemption under the law for religious objections to immunization; the mother testified at the hearing that she intended to claim such an exemption. Section 16-30-3, Ala. Code 1975, provides, in pertinent part:
"The provisions of this chapter shall not apply if:
"(1) In the absence of an epidemic or immediate threat thereof, the parent or guardian of the child shall object thereto in writing on grounds that such immunization or testing conflicts with his religious tenets and practices ...."
The father questioned the mother regarding her decision not to vaccinate the child, but he did not request that the trial court require the mother to vaccinate the child. In its judgment, the trial court did not order the mother to have the child vaccinated. Rather, the trial court's November 6, 2017, order states: "The Court is of the opinion that the child should get the vaccinations recommended by the doctors and required for the school. There does not appear to be valid religious exemption for the mother to refrain from given the child the vaccinations." Thus, the judgment indicates that the trial court expressed an opinion on the issue, but did not rule on the issue, either because the relief had not been requested or because the age of the child, who was not yet school-aged, made the application of § 16-30-3 premature. Accordingly, we conclude that the mother's argument with regard to this issue is moot.
For the reasons discussed in this opinion, the trial court's judgment is affirmed.
Appellant's request for an attorney fee is denied.
AFFIRMED.
Pittman, Moore, and Donaldson, JJ., concur.
Thomas, J., concurs in the result, without writing.

We note that, in its judgment, the trial court awarded the mother the $5,502 child-support arrearage "as of October 2017." The father did not appeal as to that award, and, therefore, we do not address it.