PITTMAN, Judge.
*67 Colleen Hoag ("the mother") appeals from a judgment of the Elmore Circuit Court modifying a previous judgment of that court as to visitation. We affirm.
The mother and David Stinson ("the father") were married in Michigan in 1990, and four children were born of their marriage: two daughters born in February 1997 and August 1999, respectively, and two sons born in July 2007 and January 2010, respectively. After relocating to Alabama, the parties separated, and the trial court entered a judgment divorcing them in June 2011 in case number DR-11-11.00. The divorce judgment, among other things, awarded the parties joint custody of the children (with physical placement alternating between the father's home and the mother's home each week) and contained the relocation-notification provisions required under the Alabama Parent-Child Relationship Protection Act ("APCRPA"), Ala. Code 1975, § 30-3-160 et seq. ; in addition, the judgment provided that the mother was to pay certain health-related and extracurricular expenses of the children.
The record reveals that the mother relocated to Michigan in October 2013 (without providing notice to the father as required under the APCRPA) in order to obtain substance-abuse counseling in an environment nearer her family; the father then brought an action (case number DR-11-11.01) in which he sought, and ultimately obtained, a modification of the divorce judgment awarding him sole legal and sole physical custody of the children ("the 2015 modification judgment"). In the 2015 modification judgment, the trial court suspended the mother's visitation with the children and stated that future visitation should take place "in a safe environment, supervised by a responsible adult of [the father's] choosing." Soon after the 2015 modification judgment had been entered, the mother petitioned for a change in custody (case number DR-11-11.03); although the pleadings and other papers filed in that action are not in the record, it is undisputed that that petition was denied, with the trial court's entering a summary judgment in the father's favor on the basis that the mother had not met the custodial-modification standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala. 1984), solely by relying upon her own sobriety and the father's armed-service deployment as grounds.
In December 2015, the mother filed another modification petition (case number DR-11-11.04); however, in that petition, the mother sought only a change in the visitation provisions in the 2015 modification judgment so as to award her "standard visitation." Among the material changes in circumstances alleged by the mother in that petition were (a) her acquisition of employment, (b) her having sustained a period of sobriety of over a year, (c) her commitment to substance-abuse monitoring as a component of her employment, and (d) her proximity to supportive family members. The father answered the petition and denied that a change in the mother's visitation rights would be appropriate; he also filed a separate action (case number CV-11-11.05) seeking a finding of contempt against the mother as to certain payments she had allegedly failed to make as required under the divorce judgment. The mother's visitation action and the father's contempt action were consolidated by the trial court, after which the mother amended her petition to seek a recalculation of child support because of the emancipation of the parties' older daughter as well as "an increase" in visitation with the remaining minor children.
After the cases had been heard on various preliminary matters and had been reassigned to another circuit judge, the *68 mother moved for the setting of a final hearing and for the entry of a pendente lite order. The trial court entered a pendente lite order granting the mother certain 2-, 3-, and 4-day visitation periods during October, November, and December 2016 and March 2017, which visitation was to occur "within the State of Alabama" at a location "no more than 30 minutes from" the workplace of the oldest remaining minor child. The mother then filed a second amended petition seeking the removal of her obligation to pay for the minor children's health and extracurricular expenses; however, that amendment was struck by the trial court, on the father's motion, as untimely under Rule 15(a), Ala. R. Civ. P.
The visitation and contempt actions were tried in February 2017, with the father, the mother, and the mother's current husband testifying. In April 2017, the trial court entered an order granting the father's contempt petition and directing the parties' counsel to submit an agreed statement of expenses and a statement of the mother's support arrearages. That order also stated, as to the visitation issue, that the mother, at her expense, would be entitled to supervised visitation with the minor children one full week in June, one full week in July, and one academic-break week (alternating between spring and fall) each year. Finally, as to visitation, the trial court's April 2017 order stated that its terms were intended only to clarify its previous judgments and "do not reflect that [the] mother has met the McLendon standard in a manner that warrants modification of the Court's" previous judgment.
In May 2017, the father filed a motion to require the mother to pay particular sums certain based upon the evidence presented at trial and to pay the father's attorney's fees; the mother filed a motion requesting that the trial court delete all references to supervised visitation and generally asserting that the father held too much power over her visitation. The trial court thereafter entered a final judgment in September 2017 that, as to the father's contempt action, found in his favor, awarding him $3,768.84 plus interest for unpaid health and extracurricular expenses incurred after 2015, $8,961 plus interest for unpaid accrued child support through October 2016, $1,253.56 plus interest for unpaid accrued child support from November 2016, and $3,000 as an attorney's fee; it also determined that the mother should pay $909.66 per month as prospective child support. As to the mother's visitation action, the trial court expressly determined that "the McLendon standard applies to a modification of custody and/or visitation in this action, which [the mother] has failed to meet"; that the mother had asserted only her claim of continued sobriety as a basis for modification, as she had in the previous custody-modification action; and that the petition to modify visitation was "due to be denied for failing to allege and present a material change for the Court to consider since the denial of the .03 Petition." However, the trial court did make certain alterations to the April 2017 order as to visitation, stating that the mother's June and July visitation weeks should not include Father's Day weekend, "consecutive July 4 weeks," or "consecutive July 17 weeks"; deleting references to fall academic breaks; awarding the mother Thanksgiving-week visitation and spring-academic-break-week visitation in odd years and Christmas-week visitation in even years; and deleting the requirements that the mother's visitation be supervised and take place in Alabama near the younger daughter's workplace. Finally, in the final judgment, the trial court declined to require the parties to share visitation expenses or to meet in a central location for visitation exchanges.
*69 On appeal, the mother raises three issues. The first concerns the trial court's referral to the McLendon custody-modification standard in its judgment. Although we agree with the mother that, in its entirety, the Ex parte McLendon standard governing custody modifications does not apply to mere visitation matters, see Gallant v. Gallant, 184 So.3d 387, 400 (Ala. Civ. App. 2014), the trial court's final judgment does not reflect that that court applied Ex parte McLendon in an incorrect manner.
We first turn to McLendon itself. In this court's review of the custody judgment that was before our supreme court in Ex parte McLendon, this court held that a mother who had petitioned for a modification of a judgment awarding custody of that mother's child to nonparents had had the burden "to show [1] a change in circumstances since the divorce in 1980 and [2] that the grant to her of custody was in the best interest of her child." McLendon v. McLendon, 455 So.2d 861, 863 (Ala. Civ. App.), rev'd, Ex parte McLendon, 455 So.2d 863 (Ala. 1984). Our supreme court, in reversing our affirmance of the trial court's decision to modify custody, held that this court had erred in its statement and application of the second of the two items composing the mother's burden:
"The Court of Civil Appeals, in affirming the trial court's award of custody to the mother, held that the mother had met her burden 'to show a change in circumstances since the divorce in 1980 and that the grant to her of custody was in the best interest of her child.' McLendon v. McLendon, 455 So.2d at 863. Although the best interests of the child are paramount, this is not the standard to be applied in this case. It is important that she show that the child's interests are promoted by the change, i.e., that she produce evidence to overcome the 'inherently disruptive effect caused by uprooting the child.' Wood v. Wood, 333 So.2d [826,] 828 [ (Ala. Civ. App. 1976) ]. This she has not done."
Ex parte McLendon, 455 So.2d at 866. At no point does Ex parte McLendon condemn this court for requiring proof of a change of circumstances as a threshold matter of proof; indeed, this court observed in E.F.B. v. L.S.T., 157 So.3d 917 (Ala. Civ. App. 2014), that "a child-custody judgment has res judicata effect as to the facts that were before the court at the time of the entry of that judgment" and is "final and conclusive on the parties and the interests of the child so long as the facts existing at the time of the entry of the judgment remain without material change." 157 So.3d at 923 (emphasis added).
Just as a petitioner who seeks to modify a previous custody judgment has the procedural burden to prove a material change in circumstances and the substantive burden of persuasion that a change of custody would materially promote the best interests of the child at issue such that the inherently disruptive effects of a custody change would be overcome, a petitioner who seeks a modification of a previous visitation judgment must, as the mother's brief concedes, demonstrate both a material change in circumstances and that the proposed change in visitation will serve the best interests of the child at issue. In other words, the initial procedural burden is the same as to modifications of custody and of visitation. As this court aptly stated in Y.N. v. Jefferson County Department of Human Resources, 67 So.3d 76, 85-86 (Ala. Civ. App. 2011) :
"[A] judgment denying a noncustodial parent visitation is not permanent and irrevocable because matters of visitation are never res judicata as to facts coming into existence after the entry of the *70 judgment; rather, visitation judgments may always be modified based on a subsequent material change of circumstances and upon proof that the modification would be in the best interests of the child."
A close examination of the trial court's September 2017 judgment reflects that that court's reference in passing to McLendon was not an endorsement of its "material-promotion" burden, which has never been applied outside the context of custody-modification actions, but was a shorthand invocation of the threshold showing a party must make in any modification proceeding touching and concerning minor children: the court states in its judgment that it is denying the modification requested by the mother "for failing to allege and present a material change to the Court to consider," which is exactly what the mother was required by Y.N. to show in order to obtain the relief she had sought. We thus conclude that the mother's first argument -- that the judgment is due to be reversed based upon the trial court's reference to Ex parte McLendon-- does not demonstrate the existence of any reversible error.
Citing, among other cases, Flanagan v. Flanagan, 656 So.2d 1228 (Ala. Civ. App. 1995), the mother next argues that, under the appropriate substantive modification standard, she demonstrated a change in circumstances warranting (a) an increase in her visitation and (b) the removal of the requirement that the mother's visitation be supervised. As to the second of those points, we may safely conclude that the trial court's deletion, in its September 2017 final judgment, of the supervision requirement that had been contained in both the 2015 modification judgment and the April 2017 order has rendered the mother's argument that she is entitled to unsupervised visitation moot. As to the first point, we construe the mother's argument as complaining not that the trial court erred in awarding her particular weeks of set visitation or in deleting requirements that that visitation be exercised in Alabama, but as challenging the trial court's decision not to award "standard" visitation (as sought in her original petition) or, at the least, a greater "increase[ ]" in her visitation than that court did.
We note that Flanagan counsels deference to the decisions of trial courts in setting an appropriate visitation schedule:
"The trial court has broad discretion in deciding on visitation rights of the noncustodial parent. Wallace v. Wallace, 485 So.2d 740 (Ala. Civ. App. 1986). This discretion applies to modification proceedings as well as to the original custody proceeding. Id.'When the issue of visitation is determined after oral proceedings, the trial court's determination of the issue will not be disturbed absent an abuse of discretion or a showing that it is plainly in error.' Andrews v. Andrews, 520 So.2d 512 (Ala. Civ. App. 1987).' Dominick v. Dominick, 622 So.2d 402, 403 (Ala. Civ. App. 1993)."
656 So.2d at 1230 (emphasis added). We note that in Flanagan, as well as in all the other authorities cited by the mother in her second argument, this court declined to second-guess the visitation awarded by the trial court.
In this case, although the mother claims to have been "forced" to move back to Michigan in order to straighten out her life after the parties' divorce, the mother admitted on cross-examination at trial both that the move had been her own decision and that she had failed to notify the father of that move via certified mail in accordance with the APCRPA (see Ala. Code 1975, §§ 30-3-164 & 30-3-165(a) ). The APCRPA specifically provides that a failure to provide a required notice under the *71 APCRPA is "a factor in determining whether custody or visitation should be modified" and "a factor in awarding increased transportation and communication expenses with the child."[1] Ala. Code 1975, § 30-3-168(a).
Thus, although the trial court could properly deem the mother's recent record of sobriety as meriting an award of certain periods of visitation when the mother had previously had none, as well as warranting the removal of supervisional and geographic restrictions on the mother's visitation rights, the trial court was not obliged to ignore the sheer amount of physical distance that the mother had placed between herself and her children by her own actions,[2] nor the effect that an award of greater amounts of visitation at such a great distance, much less "standard" visitation, would likely have on the children's social and academic development. Although we will not deny the economic and logistical consequences of the mother's election to move to Michigan upon her exercising her future visitation rights, and "[a]lthough we may have determined a different or more lenient schedule for the mother's visitation" had we sat as the trial court, "we have no authority to substitute our judgment for that of the trial court; and, absent abuse, there is no basis for reversal." Watson v. Watson, 634 So.2d 589, 590 (Ala. Civ. App. 1994).
The final issue raised by the mother concerns whether the father was afforded too much control over the visitation awarded so as to warrant reversal. However, much of the evidence relied upon by the mother in ostensible support of her argument pertains mainly to the father's preferences as manifested during the period that the mother's visitation rights had been suspended under the 2015 modification judgment, such as her view that he had controlled the visitation schedule up to the point of trial, that he had refused to allow the minor children to visit with the mother in Michigan, that he was concerned that an award of unsupervised visitation would harm the youngest child (who had been identified as having Asperger's syndrome, a mild form of autism-spectrum disorder), and that he would consistently reject efforts to afford the mother greater visitation time than the court allowed. However, the mother's third argument appears not to recognize the changes in the visitation provisions occurring between the entry of the April 2017 order and the entry of the September 2017 final judgment: the latter awards several set periods of visitation to the mother subject only to the mother's giving one month's notice to the father of her intent to exercise her visitation rights and deletes any reference to requirements that the visitation be exercised in Alabama. Thus, contrary to the mother's argument, the final judgment does not afford the father any further power to withhold visitation from the mother, or even to place conditions upon the visitation awarded.
Based upon the facts and authorities discussed herein, we conclude that the trial court's judgment modifying the mother's visitation rights as to the minor children is due to be affirmed. To the extent that the father asserts that the mother should be made to pay his attorney's fee based upon *72 the alleged frivolity of her arguments on appeal, we conclude that no sanctions under Rule 38, Ala. R. App. P., are warranted.
AFFIRMED.
Thompson, P.J., and Thomas, Moore, and Donaldson, JJ., concur.

We thus reject the mother's parenthetical contentions that her violation of the APCRPA in 2013 was immaterial and did not require the trial court to allow redirect examination of the father concerning whether the mother might or might not have committed any previous violation of that statute before the parties' divorce.

At trial, the mother nominated Louisville, Kentucky, as a potential visitation-exchange midpoint.